BULOVA WATCH COMPANY, INC. *v.* FAMILY FAIR, INC.

SUPERIOR COURT      HARTFORD COUNTY      FILE NO. 127969

Memorandum filed March 13, 1962

*Ribicoff & Kotkin,* of Hartford, for the plaintiff.

*Hyman, Keith & Hyman,* of Hartford, for the defendant.

KLAU, J. This is an action by the plaintiff, a manufacturer and distributor of watches under the distinctive trademark and name of "Bulova," seeking an injunction against the defendant, a retail department store operating under the name of "Family Fair," to restrain it from advertising, offering for sale or selling watches bearing the

trade name of the plaintiff in violation of the Fair Trade Act,—General Statutes §§ 42-104—42-110 (c. 735). The defendant's answer was a general denial.

The plaintiff has been a manufacturer and distributor of watches (as well as radios, stereos, phonographs and other products) for about fifty years, under the trade name of "Bulova." The watches are in national competition with other watches, manufactured by Elgin, Hamilton, Benrus, etcetera. The watches are widely advertised by the plaintiff, both locally and nationally, under its trade name, at a large expenditure of money. In the area including eastern Connecticut, Hartford and Middlesex Counties, Rhode Island and eastern Massachusetts, excluding Boston, the plaintiff sold and distributed watches in 1961 to about 250 accounts, including jewelry and department stores, having a wholesale value of about $325,000 and a retail value of $600,000. The plaintiff has entered into a so-called fair trade contract, pursuant to General Statutes § 42-105, with respect to the retail price at which its watches are to be sold, with Michael's, Inc., a retail jewelry store in New Haven, pursuant to which the retailer has agreed not to sell the watches bearing the plaintiff's trade name at less than the minimum prices stipulated by the plaintiff. The plaintiff has issued price lists containing the minimum prices for the retail sale of its watches to all of its accounts. In states having fair trade acts similar to chapter 735 of the General Statutes, it is the policy of the plaintiff to maintain fair trade prices for sales to consumers. Sales of the plaintiff's trade-marked "Bulova" watches, below the minimum consumer prices, would cause the plaintiff a loss of many of its retail accounts and seriously damage the goodwill which the plaintiff has created in its trade name, "Bulova" watches.

The defendant, Family Fair, Inc., owns and operates a large retail department store at 983 New Britain Avenue, in Hartford, known as the "Family Fair." The store consists of a large single-story building, newly constructed and first opened about December 1, 1961. It has a huge parking area for about one thousand cars in front of it for the accommodation of the public, which it invites to purchase therein. On the top of the building is a large sign containing the trade name of the defendant, "Family Fair." No other name is displayed on the building. The defendant advertises many of the products sold in the store in full-page advertisements, in the Hartford newspapers having a wide circulation, under the name of "Family Fair," including items sold by the jewelry department in the store. The primary purpose of the defendant is to bring the public as potential customers into the store through promotions and advertising. The store itself has thirty departments. Within the store, operations are carried on as a single, integrated department store. There are no partitions between the various departments. Over each department is hung a large sign, uniform in appearance, indicating the general nature of the commodities sold therein, such as "Men's Clothing Department," "Women's Clothing Department," "Children's Clothing," "Games and Toys," "Hardware," etcetera. On the main aisle is located a large sign with the legend "Jewelry Department." Throughout the store are colored telephones on posts to which are attached notices reading, "If you want information, dial 34," and the notices are signed "Family Fair." During business hours, a loudspeaker in the store is constantly proclaiming advertised specials which may be bought in "our — department."

There is no visible indication that the jewelry department is not being operated as a department

of "Family Fair" store. Purchasers at the jewelry department, upon payment, receive a cash register tape receipt of the amount of the purchase bearing the name of Family Fair. The entire operation of the defendant throughout all of the department is designed and intended to create the belief in the mind of the consumer that he is dealing with a single, integrated department store, all being operated under the trade name of the defendant, "Family Fair." In fact, however, the defendant leases to lessees all of the space in its store for each of the departments conducted therein, except the doughnut concession, which it operates itself.

On September 19, 1961, the defendant leased space designated as the "Jewelry Department," to a newly organized Connecticut corporation known as the "Leased Departments of Hartford, Inc.," with offices, however, at Kansas City, Missouri. The lease was not recorded and was not disclosed at any time by the defendant until the end of the trial, when it was obtained from the president of the defendant by subpoena and introduced into evidence over the defendant's objection. It is a lengthy printed document providing for the lease of space designated by the defendant for a "Jewelry Department" and for the payment of a minimum basic rent and a percentage of the gross rentals to the defendant lessor. Although it provides that the lessee's department shall be operated by the lessee solely for its own account, and the lessor shall have no ownership in it, and that the department constitutes an independent entity notwithstanding that the lessor may advertise it as though it were a single establishment under the lessor's ownership or management, the lease contains provisions requiring the lessee, upon request, to maintain such price scales which the lessor may deem necessary for the purpose of underselling other stores or es-

tablishments engaged in a similar line of business as the lessee within a fifteen-mile radius of the store. The lease, paragraph 12C, further prohibits the lessee from placing or maintaining a sign upon the leased premises or the building, or using or issuing any advertisement or any circular, sales slip, cash register slip, or wrapping or other packaging material which shall bear the lessee's name or trademark. Under paragraph 14 of the lease, all advertising is controlled by the lessor. Under paragraph 17, all merchandise offered for sale shall have the sales price marked thereon by tickets or labels specified or approved by the lessor, and shall be sold only at the marked prices. By agreement under the lease, as well as in actual practice, the jewelry department in the defendant's store is a department of "Family Fair" and advertises, offers to sell and sells merchandise under the label of "Family Fair."

Shortly after the initial opening of the defendant store in the first week of December, 1961, the jewelry department displayed for sale, and continued to so display and offer for sale, large quantities of watches containing the plaintiff's trademark at prices reduced 30 to 40 percent below the minimum retail consumer price established by the plaintiff pursuant to the fair trade contract entered into between the plaintiff and Michaels, Inc. The watches contained not only the trade name "Bulova" on the case in which they were displayed but displayed, on a "Family Fair" ticket attached thereto, two prices, one the Bulova minimum retail price, through which a line was drawn, and below it, the reduced price, labeled "our price." Clearly, the display was to advertise and offer for sale trademarked, nationally advertised watches, manufactured and distributed by the plaintiff, at prices below the minimum consumer price of the plaintiff and at a drastically reduced price of "Family Fair."

On December 6, 1961, the plaintiff sent the defendant a registered letter, return receipt requested, addressed to the defendant at its place of business, advising it that it was selling its watches at prices below those established under its fair trade contract. The letter also contained a copy of its fair trade contract with Michaels, Inc., and the current retail price lists. The defendant refused to accept delivery of the letter when tendered by the local post-office mailman, although it was aware that the letter came from the plaintiff, since its name appeared as the sender on the envelope. The letter, unopened, was returned by the postal authorities to the plaintiff on December 8. On December 13, 1961, an investigator employed by the plaintiff purchased a Bulova watch, the Bulova price of which was displayed as $39.75 and the "Family Fair" price was tagged as $27.87. A "Family Fair" cash register receipt was given to the purchaser. The jewelry department in "Family Fair" continued to offer for sale plaintiff's trademarked watches below the fair trade prices established by the plaintiff, despite a temporary injunction obtained by the plaintiff from *MacDonald, J.,* on December 15, 1961. On December 18, 1961, another investigator purchased a Bulova trademarked watch to which was attached a metal tag displaying the Bulova price of $59.50 and the "Family Fair" price of $39.97, and he received a similar "Family Fair" cash register receipt. On plaintiff's motion to show cause why the defendant should not be adjudged in contempt, the parties entered into a stipulation on December 20, 1961, wherein, without prejudice, the defendant agreed, until further order of the court, not to permit the advertising, offering for sale or sale of plaintiff's trademarked watches below the fair trade prices fixed by the plaintiff. The defendant has not entered into any fair trade contract with the plaintiff.

The plaintiff has the burden of proof that the defendant has violated § 42-109 of the General Statutes, which provides: "Sale below stipulated price actionable. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this chapter, whether the person so advertising, offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

The constitutionality of chapter 735 of the General Statutes, the Fair Trade Act, has been upheld in the case of *Burroughs Wellcome & Co.* v. *Johnson Wholesale Perfume Co.*, 128 Conn. 596 (1942). The *Burroughs* case, supra, followed the decision of the Supreme Court of the United States in *Old Dearborn Distributing Co.* v. *Seagram-Distillers Corporation*, 299 U.S. 183, which upheld the constitutionality of the Illinois Fair Trade Act, which the *Burroughs* decision, supra, 600, stated was not essentially different from the Connecticut act. In the *Old Dearborn* case, supra, 193, the court said: "The primary aim of the law is to protect the property—namely, the good will—of the producer, which he still owns. The price restriction is adopted as an appropriate means to that perfectly legitimate end, and not as an end in itself." The court further stated: "[G]ood will is property in a very real sense, injury to which, like injury to any other species of property, is a proper subject for legislation. Good will is a valuable contributory aid to business—sometimes the most valuable contributing asset of the producer or distributor of commodities. And distinctive trade-marks, labels and brands, are legitimate aids to the creation or enlargement of such good will. It is well settled that the proprietor of the good will 'is entitled to protection as against

one who attempts to deprive him of the benefits resulting from the same . . . .' . . . The ownership of the good will, we repeat, remains unchanged, notwithstanding the commodity has been parted with. Section 2 of the act [Conn. General Statutes § 42-109] does not prevent a purchaser of the commodity bearing the mark from selling the commodity alone at any price he pleases. It interferes only when he sells with the aid of the good will of the vendor; and it interferes then only to protect that good will against injury. It proceeds upon the theory that the sale of identified goods at less than the price fixed by the owner of the mark or brand is an assault upon the good will, and constitutes what the statute denominates 'unfair competition.' " Id. 194; see also *Electrolux Corporation* v. *Danaher,* 9 Conn. Sup. 237, 241.

The defendant herein has wilfully and knowingly required and permitted its trade name, "Family Fair," to be used to advertise, offer to sell and to sell watches manufactured and distributed by the plaintiff and bearing its trade name at prices far below the prices stipulated by contract entered into between the plaintiff and Michaels, Inc. By holding out to the purchasing public that it "sells" merchandise at a price lower than that prevailing in the community, the defendant has sought to enhance the goodwill in its own trade name, "Family Fair" department store, at the expense of the plaintiff's goodwill in its trade name. The defendant has actively participated in damaging the goodwill of the plaintiff created, by its trade name, with the purchasing public. See *Colgate-Palmolive Co.* v. *Max Dichter & Sons, Inc.,* 142 F. Sup. 545 (D. Mass. 1956); *Bulova Watch Co.* v. *Sattler's Inc.,* 208 Misc. 257; (N.Y. 1955); 87 C.J.S. 535.

The fact that the defendant is not the actual seller does not absolve it from responsibility for

the violation of § 42-109 of the General Statutes. It has clothed the lessee and the lessee's employees with the garment of its own trade name, "Family Fair," in advertising, offering to sell and selling the plaintiff's trade-named watches below the price established by the plaintiff, and thereby damaged the goodwill of the plaintiff. Equity cannot permit the defendant, having damaged the plaintiff, to defeat a remedy which except for its own misconduct would not be available. *Deitrick* v. *Greaney,* 309 U.S. 190, 196; *Revere Copper & Brass, Inc.* v. *Economy Sales Co.,* 127 F. Sup. 739 (D. Conn. 1954).

The issues are found for the plaintiff, and judgment may enter for the plaintiff permanently enjoining the defendant from permitting the advertising, offering for sale or sale of the plaintiff's trade-marked watches below the minimum consumer prices fixed by the plaintiff. Plaintiff's counsel may prepare a judgment file for submission to the court in accordance with this opinion.