EARL E. GAY, ADMINISTRATOR OF THE ESTATE OF BABY GAY, DECEASED v. DR. G. R. C. THOMPSON; DR. C. J. POWELL; DR. ROBERT W. NICHOLSON AND DR. J. B. LOUNSBURY.

(Filed 4 February, 1966.)

**1. Death § 3—**

In this jurisdiction a right of action to recover damages for wrongful death is purely statutory, and the statute confines recovery to a fair and just compensation for the pecuniary injuries resulting from the death. G.S. 28-174.

**2. Damages § 2—**

Compensatory damages may not be based on mere speculation devoid of factual basis.

**3. Pleadings § 12—**

A demurrer admits for its purpose the truth of the factual averments well stated and the relevant inferences of fact reasonably deducible therefrom, but does not admit inferences or conclusions of law.

**4. Death § 3;   Physicians and Surgeons § 11—**

No action lies to recover for the wrongful prenatal death of a viable child *en ventre sa mere,* since there can be no evidence from which a jury may infer upon any factual basis any pecuniary injury resulting from such death.

ON *certiorari* from *Morris, J.,* 24 August 1965 Session of NEW HANOVER.

Civil action by the administrator of the estate of Baby Gay to recover damages for the alleged wrongful prenatal death of Baby Gay, a viable child *en ventre sa mere.*

The complaint alleges in substance: Plaintiff is the duly qualified administrator of the estate of Baby Gay, deceased. Baby Gay was the child of plaintiff and his wife Barbara Pickett Gay, was conceived about 24 December 1961, and was delivered stillborn 26 August 1962. On 10 March 1962 Barbara Pickett Gay consulted Dr. G. R. C. Thompson with respect to her condition and the child developing in her womb, and the relationship of physician and patient was then created, which existed until the child's death 25 or 26 August 1962. Dr. Thompson made several examinations of her and the child between 10 March 1962 and 23 August 1962. On 23 August 1962 she was in good health, her condition was normal for a woman eight months pregnant, and the child's condition and growth were normal for a child conceived about eight months previously, and the child was capable of a separate existence outside of his mother's womb, if proper medical care had been received by him and his mother. On 23 August 1962 Barbara Pickett Gay had

no symptoms of being in labor, and no complications existed with respect to her condition or that of the child which required that labor be induced prematurely. On 23 August 1962, upon recommendation of Dr. Thompson, she entered a hospital in order that Dr. Thompson could cause a premature delivery of her baby. Later on that day Dr. Thompson in an effort to induce the premature delivery of her baby ruptured her amniotic membranes and administered labor-inducing drugs for a period of about 41 hours without success. About noon on 25 August 1962 he directed her to return to her home. During the night of that day in her home she suffered chills and pressure pains, and the next morning she had a high temperature and was readmitted to the hospital suffering from an acute infection of the uterus, which later resulted in her death, and her baby was delivered dead that afternoon. The complaint then alleges with particularity a number of acts of negligence by Dr. Thompson, and that such acts of negligence on his part proximately caused Baby Gay's death; that Baby Gay prior to defendant's negligence was a healthy, normal boy, and because of his wrongful death plaintiff is entitled to damages in the amount of $50,000.

On 26 August 1964 plaintiff took a voluntary nonsuit as to Drs. C. J. Powell, Robert W. Nicholson, and J. B. Lounsbury.

Defendant Dr. G. R. C. Thompson on 11 September 1964 demurred to the complaint on the grounds (1) that it does not state facts sufficient to constitute a cause of action, in that no action can be maintained for the wrongful death of a stillborn child, (2) that plaintiff has no legal capacity to sue, and (3) the relationship of doctor and patient did not exist between defendant and Baby Gay.

Judge Morris overruled defendant's demurrer on 24 August 1965, and allowed him 30 days within which to answer.

On 22 September 1965 we allowed *certiorari.*

*Burney & Burney, Marshall & Williams, and A. Dumay Gorham, Jr., for defendant appellant, Dr. G. R. C. Thompson.*
*Aaron Goldberg and Eugene H. Phillips for plaintiff appellee.*

PARKER, J. The sole question for decision in this case is whether there is a right of action under our wrongful death statute, G.S. 28-173, 174, by the administrator of a stillborn child who died as a proximate result of tortious injuries to his mother and himself while *en ventre sa mere,* when the child was viable at the time of the injuries. This is a case of novel impression in this State.

The common law, adopted as the law of our State, G.S. 4-1, gave no right of action for the tortious killing of a human being. *Armentrout v. Hughes,* 247 N.C. 631, 101 S.E. 2d 793, 69 A.L.R. 2d

620; *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307. The right of action to recover damages for death caused by wrongful act was given in England in 1846 by the enactment of 9 and 10 Victoria, Ch. 93. This statute is commonly called "Lord Campbell's Act," because he, who had the rare distinction of having been successively Lord Chief Justice and Lord Chancellor of England, was its author and mainly instrumental in its adoption. *In re Estate of Ives*, 248 N.C. 176, 102 S.E. 2d 807; *Hartness v. Pharr*, 133 N.C. 566, 45 S.E. 901. Thereafter, Lord Campbell's Act has been copied and enacted, with many variations, in all, or practically all, the states of this nation, as well as by the U. S. Congress. *Killian v. R. R.*, 128 N.C. 261, 38 S.E. 873; 25A C.J.S., Death, § 14.

In *Armentrout v. Hughes, supra*, the Court, after stating that Lord Campbell's Act was enacted in England in 1846, said: "Our Legislature, eight years later, enacted a statute modeled on the English statute, c. 39, Laws 1854, R.C. c. 1, § 9 and 10. The statute then enacted is now, without material change, incorporated in our laws as G.S. 28-173, 174. The statute by express language limits recovery to 'such damages as are a fair and just compensation for the pecuniary injury resulting from such death.' It does not provide for the assessment of punitive damages, nor the allowance of nominal damages in the absence of pecuniary loss."

In this jurisdiction a right of action to recover damages for wrongful death is purely statutory, and exists only by virtue of G.S. 28-173, 174. *In re Miles*, 262 N.C. 647, 138 S.E. 2d 487; *Graves v. Welborn*, 260 N.C. 688, 133 S.E. 2d 761; *In re Estate of Ives, supra; Lamm v. Lorbacher*, 235 N.C. 728, 71 S.E. 2d 49.

*Armentrout v. Hughes, supra*, was an action for damages for the wrongful death of plaintiff's intestate, defendant's wife, a woman 80 years old and in good health. Defendant admitted the killing, his conviction for murder and prison sentence, but denied the deceased had any earning capacity. One issue was submitted to the jury: "What amount, if any, is plaintiff entitled to recover of the defendant?" The jury answered: "None." Judgment was entered on the verdict, and plaintiff appealed. The Court held that plaintiff's contention that he is entitled to nominal damages at least which would entitle him to the costs, G.S. 6-1, is untenable, and the court's charge limiting recovery to the pecuniary loss resulting from the death is without error.

*Hines v. Frink and Frink v. Hines*, 257 N.C. 723, 127 S.E. 2d 509, was an appeal in two cases, involving claims and counterclaims for personal injuries, property damage, and the wrongful death of Thomas Ray Gore resulting from a collision between a pickup truck and an automobile. Upon the trial Hines and Eagle offered evidence.

Frink, Administrator, offered none. At the close of all the evidence, the counterclaim (cross-action) of Frink, administrator, for the alleged wrongful death of Gore, his intestate, was nonsuited on motion of Hines and Eagle. The jury awarded damages to Hines and Eagle. Frink, administrator, appealed. On appeal, *inter alia,* Frink, administrator, assigned as error the court's nonsuit of his counterclaim (cross-action) for the wrongful death of his intestate, Gore. Sharp, J., said for the Court: "No discussion of negligence or proximate cause is necessary to sustain the motions of Hines and Eagle to nonsuit the action of Frink, administrator, for the wrongful death of his intestate. He offered no evidence and the record is devoid of any evidence as to the age, health, habits, or earning capacity of Gore."

*Scriven v. McDonald,* 264 N.C. 727, 142 S.E. 2d 585, was an action by plaintiff, administrator, to recover damages for the alleged wrongful death of his intestate, Anthony Glenn Scriven, hereafter called Anthony. Issues as to the alleged negligence of defendants and as to the alleged contributory negligence of Anthony's mother and sole beneficiary were answered in favor of plaintiff, and damages were awarded in the amount of $5,750. Judgment was entered on the verdict. Defendants appealed, and contended the action should have been nonsuited on the ground the evidence fails to show pecuniary loss on account of Anthony's death. Plaintiff's evidence, considered in the light most favorable to him, showed the following facts in brief summary: Anthony on the day of his death was eleven years, four months and fourteen days old. His height was four feet and ten inches. He had not been in any public school. He could dress himself, but there were a few things he could not do; he could not fasten buttons; he could put on his shoes, but he could not tie them. He was mentally retarded, and thereby seriously handicapped. He had not done any work to make money. He was able to understand and carry out simple directions. Bobbitt, J., speaking for the Court, said:

"Plaintiff's evidence and portions of Dr. Mangum's testimony not in conflict therewith confront us with the fact that Anthony, from birth until death, was mentally retarded and thereby seriously handicapped. Absent substantial evidence, medical or otherwise, tending to show a reasonable probability Anthony could or might overcome his handicap, the only reasonable conclusion to be drawn from the evidence is that he would continue to be a dependent person rather than a person capable of earning a livelihood. The burden of proof is upon plaintiff to show pecuniary loss to the estate on account of An-

thony's death. In our view, plaintiff's evidence negatives rather than shows such pecuniary loss. Hence, the court erred in denying defendants' motion for judgment of involuntary nonsuit.

"The statute, G.S. 28-174, leaves no room for sentiment. It confers a right to compensation only for pecuniary loss."

The Court has consistently held that G.S. 28-173, 174, which gives the right of action for wrongful death, confines the recovery to "such damages as are a fair and just compensation for the pecuniary injury resulting from such death," and by the express language of G.S. 28-174 this is a prerequisite to the right to recover damages under our wrongful death statute. "It does not contemplate *solatium* for the plaintiff, nor punishment for the defendant." Negligence alone, without "pecuniary injury resulting from such death," does not create a cause of action. *Collier v. Arrington*, 61 N.C. 356; *Kesler v. Smith*, 66 N.C. 154; *Carpenter v. Power Co.*, 191 N.C. 130, 131 S.E. 400; *Hoke v. Greyhound Corp.*, 226 *N.C.* 332, 38 S.E. 2d 105; *Armentrout v. Hughes, supra; Hines v. Frink and Frink v. Hines, supra; Scriven v. McDonald, supra.*

In *Graf v. Taggert*, 43 N.J. 303, 204 A. 2d 140 (1964), the Court said: "When our statute [Death Act] was enacted in 1848 it expressly limited damages to pecuniary loss. The same limitation remains today. The act created a new cause of action for the loss suffered by the designated beneficiaries, measured by their reasonable expectations of pecuniary advantage from the continuance of the life of the deceased. [Citing authority.] In the absence of pecuniary loss the cause of action will not lie. [Citing authority.]"

We recognize that the damages in any wrongful death action are to some extent uncertain and speculative. A jury may indulge in such speculation where it is necessary and there are sufficient facts to support speculation. Conversely, damages may not be assessed on the basis of sheer speculation, devoid of factual substantiation. 22 Am. Jur. 2d, Damages, § 24; 25 C.J.S., Damages, § 26, page 675 *et seq.; Graf v. Taggert, supra.*

In the case of prenatal death there is no competent means of measuring the probable future earnings of the *foetus*. It is virtually impossible to predict whether an unborn child, but for its death, would have been capable of giving pecuniary benefit to anyone. "None of the usual indicia such as mental and physical capabilities, personality traits, aptitudes and training of the wrongfully killed are present. While it is true that the social position of the parents may constitute a slight unit of measure, the probable future earnings of a stillborn *foetus* are patently a matter of sheer speculation. An objection, in the same vein, specifically applicable to the wrong-

ful death action is that it can hardly be seriously contended that the death of a *foetus* represents *any* real pecuniary loss to the parents. There may have been a time when the average child went to work as soon as he was able. That day has passed. Today, the rearing of a child typically constitutes a great pecuniary liability for the parents." Comment, "Developments in the Law of Prenatal Wrongful Death," 69 Dickinson Law Review 258, 267 (1965).

In *Graf v. Taggert, supra,* the sole question on the appeal was "whether there is a right of recovery under the New Jersey Death Act, N.J.S. 2A:31-1 *et seq.,* N.J.S.A., by the administrator *ad prosequendum* of a stillborn child who died as a result of injuries received while *en ventre sa mere.*" From a final judgment dismissing the wrongful death count, the plaintiffs appealed. In affirming this judgment the Court said:

> ". . . [T]he anticipated evidence on the issue of damages for loss of pecuniary benefit in prenatal death cases is *uniformly* speculative. The parents or other beneficiaries will merely be able to show their respective ages and economic and social status. There can be no evidence as to the child's capabilities and potentialities. In short, there can be no evidence from which to infer pecuniary loss to the surviving beneficiaries. Our Death Act was not intended to grant damages against a tortfeasor merely to punish him. We therefore hold that under our Death Act there can be no right of recovery for the wrongful death of an unborn child."

The old doctrine that when a pregnant woman is injured, and as a result the child subsequently born alive suffers deformity or some other injury the child cannot recover damages, has since 1946 lost all or most all of its legalistic following. Prosser on Torts, 3rd Ed., Ch. 10, § 56, Prenatal Injuries. Since the child must carry the burden of infirmity that results from another's tortious act, it is only natural justice that it, if born alive, be allowed to maintain an action on the ground of actionable negligence. Cases of prenatal injury followed by a live birth constitute a type of common law personal injury action, whereas wrongful death actions, particularly in this jurisdiction, are statutory creations. Consequently, there is a distinction between the concepts of prenatal injury followed by a live birth and wrongful prenatal death. 69 Dickinson Law Review, *supra,* 264 *et seq.*

It is hornbook law that a demurrer admits, for the purpose of testing the sufficiency of the pleading, the truth of the factual averments well stated and the relevant inferences of fact reasonably de-

ducible therefrom, but a demurrer does not admit inferences or conclusions of law. 3 Strong, N. C. Index, Pleadings, § 12.

In brief, there can be no evidence from which to infer "pecuniary injury resulting from" the wrongful prenatal death of a viable child *en ventre sa mere;* it is all sheer speculation. We therefore hold that under our Death Act, G.S. 28-173, 174, there can be no right of action for the wrongful prenatal death of a viable child *en ventre sa mere.*

The following cases have denied any recovery for prenatal death: *Graf v. Taggert, supra,* which is a scholarly and excellent decision; *Hogan v. McDaniel,* 204 Tenn. 235, 319 S.W. 2d 221; *Durrett v. Owens,* 212 Tenn. 614, 371 S.W. 2d 433; *Muschetti v. Pfizer,* 208 Misc. 870, 144 N.Y.S. 2d 235; *In re Logan's Estate,* 4 Misc. 2d 283, 156 N.Y.S. 2d 49, *aff'd* 2 App. Div. 2d 842, 156 N.Y.S. 2d 152, *aff'd* 3 N.Y. 2d 800, 166 N.Y.S. 2d 3; *Norman v. Murphy,* 124 Cal. App. 2d 95, 268 P. 2d 178; *Howell v. Rushing,* 261 P. 2d 217 (Supreme Court of Oklahoma 1953); *Drabbels v. Skelly Oil Co.,* 155 Neb. 17, 50 N.W. 2d 229; *Commonwealth v. Equitable Gas Company,* 415 Pa. 113, 202 A. 2d 11; *Acton v. Shields,* 386 S.W. 2d 363 (Supreme Court of Missouri 1965). These authorities, which consider the problem of remote and speculative damages in prenatal death, seem to be in accord with our view: 2 Harper and James, The Law of Torts, § 18.3, p. 1031; 69 Dickinson Law Review, *supra* 264 *et seq.* See also 63 Michigan Law Review 579 (1965), where there is an elaborate and lengthy article by David A. Gordon entitled "The Unborn Plaintiff." On p. 594 Gordon states: "To attack the requirement of live birth is, practically speaking, to abandon an interest in the *fetus* and to embrace a policy that declares that the beneficiaries of a stillborn infant ought to recover under the wrongful death statutes. This is not justifiable, and clearly our knowledge of science does not push us over any line where, in an earlier and different situation, ignorance checked our steps." Gordon also says on p. 595: "A fundamental basis of tort law is the provision of compensation to an innocent plaintiff for the loss that he has suffered. Tort law is not, as a general rule, premised upon punishing the wrongdoer. It is not submitted that the tortious destroyer of a child in *utero* should be able to escape completely by killing instead of merely maiming. But it is submitted that to compensate the parents any further than they are entitled by well-settled principles of law and to give them a windfall through the estate of the *fetus* is blatant punishment."

The following cases allow a recovery for prenatal wrongful death: *Fowler v. Woodward,* 244 S.C. 608, 138 S.E. 2d 42; *Odham v. Sherman,* 234 Md. 179, 198 A. 2d 71 (three judges dissented); *Gorke*

*v. LeClerc,* 23 Conn. Sup. 256, 181 A. 2d 448; *Hale v. Manion,* 189 Kan. 143, 368 P. 2d 1; *Stidam v. Ashmore,* 109 Ohio App. 431, 167 N.E. 2d 106; *Poliquin v. MacDonald,* 101 N.H. 104, 135 A. 2d 249, rule modified as to viability by *Bennett v. Hymers,* 101 N.H. 483, 147 A. 2d 108; *Worgan v. Greggo,* 50 Del. 258, 128 A. 2d 557 (Superior Court of Delaware); *Bonbrest v. Kotz,* 65 F. Supp. 138 (D. C. Cir. 1946) (recovery was specifically limited to infants born alive, 65 F. Supp. at 142); *Mitchell v. Couch,* 285 S.W. 2d 901 (Ky. 1955); *Rainey v. Horn,* 221 Miss. 269, 72 So. 2d 434; *Verkennes v. Corniea,* 229 Minn. 365, 38 N.W. 2d 838, 10 A.L.R. 2d 634; *Porter v. Lassiter,* 91 Ga. App. 712, 87 S.E. 2d 100. These cases should be distinguished from decisions where death actions were allowed for infants who have been primarily injured, and have died subsequent to birth. In such cases, the court in essence is merely recognizing a cause of action for prenatal injury. *Cf. Hall v. Murphy,* 236 S.C. 257, 113 S.E. 2d 790; *Amann v. Faidy,* 415 Ill. 422, 114 N.E. 2d 412; *Jasinsky v. Potts,* 153 Ohio St. 529, 92 N.E. 2d 809.

This is said in 69 Dickinson Law Review, *supra,* p. 259 *et seq.:*

"A survey of the various jurisdictions does not disclose a satisfactory explanation for the allowance of prenatal wrongful death recovery. Although ten jurisdictions have permitted actions for prenatal wrongful death, none of the cases offer a compelling argument in favor of recovery. The leading case, *Verkennes v. Corniea* [229 Minn. 265, 38 N.W. 2d 838, 10 A.L.R. 2d 634], recognized a cause of action for the stillbirth of a viable *foetus.* However, the opinion dwelt almost exclusively on the subject of prenatal injury. Since no distinction was made between prenatal death and prenatal injury, the implication is that the court equated the two. Five of the ten jurisdictions permitting the action for wrongful death cite *Verkennes* as controlling. Moreover, none of these jurisdictions had previously recognized a right of recovery for prenatal injury. It is submitted that this propensity to discuss the death issue in terms of prenatal injury may reflect the courts' desire to disassociate themselves from the unpopular and crumbling rule of *Dietrich v. Northampton,* [138 Mass. 14, 52 Am. Rep. 242 (1884)]. The courts may have merely utilized the factual situation of prenatal death as a vehicle to join the growing trend in support of recovery for prenatal injuries.

"Three of the four remaining jurisdictions which had previously permitted actions for prenatal injury, also followed the general rationale of *Verkennes v. Corniea.* These courts, however, relied primarily on prenatal injury cases which had been

decided within their respective jurisdictions. The tenth juris-diction, Connecticut, in *Gorke v. LeClerc* [23 Conn. Sup. 256, 181 A. 2d 448], recognized the death action on the theory that it was unjust to permit recovery where the infant survives for only a few minutes and deny recovery where the infant dies just before birth. In essence, *Gorke* ruled that birth is an arbi-trary and inappropriate limitation upon the right to recovery."

In *Dietrich, Adm. v. Inhabitants of Northampton,* 138 Mass. 14, 52 Am. Rep. 242 (1884), the Court in an opinion written by Justice Oliver Wendell Holmes, Jr., afterwards a most distinguished mem-ber of the United States Supreme Court, held:

"If a woman, between four and five months advanced in pregnancy, by reason of falling upon a defective highway, is de-livered of a child, who survives his premature birth only a few minutes, such child is not a 'person,' within the meaning of the Pub. Sts. c. 52, § 17, for the loss of whose life an action may be maintained against the town by his administrator."

G.S. 28-173 reads in part: "When the death of a *person* is caused by a wrongful act, neglect or default of another. . . ." (Emphasis ours.) We have based our decision on the ground there can be no evidence from which to infer "pecuniary injury resulting from" the wrongful prenatal death of a viable child *en ventre sa mere;* it is all sheer speculation. Consequently, it is not necessary for us to de-cide in this case the debatable question as to whether a viable child *en ventre sa mere,* who is born dead, is a person within the mean-ing of our wrongful death act. See *Graf v. Taggert, supra,* at p. 143 of 204 A. 2d 140.

The learned judge below erred in overruling defendant's demur-rer to the complaint. He should have sustained it, and dismissed the action. The judgment below is

Reversed.