SUSAN FOX-KIRK, Guardian Ad Litem for WHITNEY P. KIRK (Minor), SUSAN FOX-KIRK, Individually, and MARK CHANDLER KIRK, Individually v. WILLIAM RAY HANNON, BRAD RAGAN, INC., d/b/a CAROLINA TIRE COMPANY

No. COA99-1168

(Filed 20 February 2001)

**1. Damages and Remedies— future damages—loss of future earning capacity**

The trial court did not err in a negligence action arising out of a car accident by admitting testimony concerning the almost three-year-old injured minor child's future damages including loss of future earning capacity, because: (1) while proof of future damages for young children involves a significant degree of speculation, the Court of Appeals declines to hold that young children cannot recover for loss of earning capacity when they are injured so early in life where there is sufficient evidence offered so that such damages are not unreasonably speculative; and (2) plaintiffs presented sufficient evidence including testimony and medical records pertaining to the minor child's mental and physical condition prior to injury to provide the jury with a reasonable basis to estimate damages of lost earnings.

**2. Damages and Remedies— future damages—inability to complete college—effect of scarring on future employability**

The trial court did not err in a negligence action arising out of a car accident by admitting testimony concerning the almost

three-year-old injured minor child's future damages including her inability to complete college and the effect of her scarring on future employability, because the record shows that experts who testified as to the minor child's ability to attend college and her future employment opportunities all testified based on their own personal evaluations of the child, a review of her additional medical records, and their expertise and training. N.C.G.S. § 8C-1, Rule 702(a)

### 3. Emotional Distress— negligent infliction—foreseeability—mother viewing injury of child—denial of directed verdict proper

The trial court did not err by denying defendants' motion for a directed verdict as to plaintiff mother's negligent infliction of emotional distress claim arising out of the severe injury of her child during an automobile accident, because: (1) plaintiff's burden of negligence was met by defendants' stipulation as to negligence; (2) plaintiff presented evidence from her psychiatrist of diagnosable mental health conditions to show she suffered severe emotional distress; and (3) it was foreseeable to defendant driver that his negligent act which injured the minor child would cause her mother severe emotional distress when the mother was present in the car, personally observed defendant's negligent act, and immediately perceived the injuries suffered by her daughter.

### 4. Evidence— hearsay—unavailability—non-testifying treating doctor's letter—no requisite findings of trustworthiness—prejudicial error

The trial court erred in a negligence case arising out of an automobile accident by admitting the 1 July 1998 letter from a non-testifying treating doctor to plaintiffs' counsel under N.C.G.S. § 8C-1, Rule 804(b)(5), the unavailable declarant residual exception to the hearsay rule, which indicated for the first time that a brain injury was more likely for plaintiff minor child, because: (1) the trial judge relied upon findings in a pretrial order of another judge permitting defendants to introduce the doctor's medical records and correspondence; (2) the judge needed to either ensure that the prior judge's order contained sufficient findings to render the letter admissible under Rule 804(b)(5), or to hear evidence and make such findings himself when the trustworthiness of the letter was at issue; (3) there are no findings of trustworthiness in the rulings of either judge regarding the letter

to permit the Court of Appeals to determine whether it was properly admitted under Rule 804(b)(5); and (4) in view of the conflicting testimony by the experts at trial, the opinion of the minor child's treating doctor for more than two years as to whether the minor child suffered a traumatic brain injury likely carried significant weight and was thus prejudicial.

**5. Trials— personal injury cases—"golden rule" statements improper**

Counsel should avoid using "golden rule" statements in closing arguments in personal injury cases which ask the jury to put themselves in the position of the injured party.

**6. Jury— quotient verdict—juror affidavits properly refused**

The trial court did not err in a negligence case arising out of an automobile accident by refusing to consider juror affidavits which indicated that the jury rendered a quotient verdict, because the evidence must come from sources other than the jurors themselves in order to impeach a jury's verdict as a quotient verdict.

**7. Costs— attorney fees—awarded to defendants—respondeat superior—negligent retention and hiring—improper after first set of interrogatories**

The trial court erred in a negligence case arising out of an automobile accident by awarding attorney fees to defendants under N.C.G.S. § 6-21.5 regarding plaintiffs' claim of respondeat superior and negligent retention and hiring against defendant Goodyear dating back to the first set of interrogatories, because the trial court's finding stated that the non-existence of the requisite relationships was established through defendants' answer and course of discovery.

**8. Costs— attorney fees—awarded to defendants—no showing of negligent infliction of emotional distress**

The trial court did not err in a negligence case arising out of an automobile accident by awarding attorney fees to defendants under N.C.G.S. § 6-21.5 regarding plaintiff father's claim for negligent infliction of emotional distress, because plaintiff had no evidence to show he suffered severe and disabling psychological problems when he had not sought medical treatment in the two-year period of time between the accident and summary judgment disposition of the claim.

Appeal by defendants from judgment entered 31 August 1998 and order entered 22 September 1998; appeal by plaintiffs from order entered 6 October 1998, both by Judge Steve A. Balog in Person County Superior Court. Heard in the Court of Appeals 21 August 2000.

*Poe, Hoof & Reinhardt, by G. Jona Poe, Jr., and J. Bruce Hoof, for plaintiffs.*

*Yates, McLamb & Weyher, L.L.P., by Kirk G. Warner, Gwenda L. Laws, and Michael J. Byrne for defendants.*

MARTIN, Judge.

On 22 July 1995, defendant Hannon backed out of a driveway and hit the rear passenger side of plaintiffs' vehicle, which was traveling south on U.S. Hwy. 701. At the time of the accident, defendant Hannon was acting within the course and scope of his employment with defendant Brad Ragan, Inc. [hereinafter defendant Ragan]. The impact caused plaintiffs' vehicle to overturn. Plaintiff Whitney Kirk, a minor, was seated in her car seat near the point of impact, and suffered a skull fracture. She was transported to Columbus County Hospital, then airlifted to UNC Hospitals. She was discharged five days later after undergoing plastic surgery, and later underwent two additional scar revision surgeries. Whitney's parents, plaintiffs Mark Kirk and Susan Fox-Kirk, were treated for minor injuries and released.

Plaintiffs sued to recover for their personal injuries and for the negligent infliction of emotional distress upon Susan Fox-Kirk and Mark Kirk. They alleged negligence on defendant Hannon's part, imputed to defendants Ragan and Goodyear Tire and Rubber Company [hereinafter "defendant Goodyear"], and negligence on the part of defendants Ragan and Goodyear in hiring and retaining defendant Hannon and entrusting him with a vehicle.

Defendants' answered, denying negligence and asserting Mark Kirk's negligence as a defense. Defendants denied in their answer that there was an agency relationship between defendant Hannon and defendant Goodyear, and denied that defendant Goodyear exercised any control over defendant Ragan. Plaintiffs then sought discovery information regarding the relationship between defendant Goodyear and defendant Ragan. After discovery, defendants' motion for summary judgment as to Mark Kirk's claim for negligent infliction

FOX-KIRK v. HANNON

[142 N.C. App. 267 (2001)]

of emotional distress was granted, but their motion for summary judgment as to a like claim by Susan Fox-Kirk was denied. Defendant Goodyear's motion for summary judgment as to all claims was allowed, and defendant Ragan's motion for summary judgment as to the negligent hiring and retention claim was also granted.

Prior to trial, Dr. Mark Chandler of North Carolina Neuropsychiatry Clinic, P.A., one of Whitney Kirk's treating physicians, declined to be deposed or to testify due to a stress-related mental illness medically preventing him from testifying at trial or in deposition. On 29 July 1998, Judge W. Osmond Smith, III, entered an order permitting defendants to introduce into evidence at the trial all written hearsay statements of Dr. Chandler, including medical records and correspondence, pursuant to G.S. § 8C-1, Rules 804(a) and (b)(5).

Defendants subsequently stipulated to Hannon's negligence, though they continued to deny that such negligence was a proximate cause of plaintiffs' alleged injuries. The trial commenced before Judge Balog on 3 August 1998 on the issues of proximate cause and damages. During the trial, citing Judge Smith's 29 July ruling, Judge Balog permitted plaintiffs to introduce into evidence as a medical record, a portion of a 1 July 1998 letter from Dr. Chandler to plaintiffs' counsel. In the letter Dr. Chandler stated, for the first time, his opinion that Whitney Kirk had sustained a brain injury.

On 14 August 1998, the jury returned a verdict awarding Whitney Kirk $1,675,000, awarding Susan Fox-Kirk $125,000, and awarding Mark Kirk $35,000. Judgment was entered on the verdict. Defendants were granted attorneys' fees pursuant to G.S. § 6-21.5 in the amount of $504 for fees incurred in defending Mark Kirk's negligent infliction of emotional distress claim and $6,381 for defending the claims against defendant Goodyear. Defendants appeal from the judgment entered on the verdicts. Plaintiffs appeal from the order allowing defendants' attorneys' fees as to the claims against defendant Goodyear and Mark Kirk's claim for negligent infliction of emotional distress.

I.

[1] Defendants assign error to the trial court's rulings admitting testimony as to Whitney Kirk's future damages. Specifically, defendants contend testimony regarding her loss of future earning capacity, her inability to complete college, and the effect of her scarring on future

employability, was too speculative and should have been excluded. We disagree.

The law is well settled that an infant can recover for impairment of earning capacity once attaining majority. *Kleibor v. Rogers*, 265 N.C. 304, 144 S.E.2d 27 (1965). It is also recognized that some speculation is inherent in the projection of future earning capacity of a child or an adult. *Bahl v. Talford*, 138 N.C. App. 119, 530 S.E.2d 347, *disc. review denied*, 352 N.C. 587, 544 S.E.2d 776 (2000). Citing *Gay v. Thompson*, 266 N.C. 394, 146 S.E.2d 425 (1966), defendants contend that Whitney was too young for the testimony to be anything but speculative.

In *Gay*, the Court held there was no recovery available under the then-existing Wrongful Death Act for a stillborn child because damages would be based on sheer speculation. *Id.* at 400, 146 S.E.2d at 429. The Court revisited this issue in *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489, *reh'g denied*, 320 N.C. 799, 361 S.E.2d 73 (1987), again holding that losses related to income are too speculative where the child is stillborn. Although the Court in *DiDonato* did not address income losses for a young child, we find it instructive that the Court did cite the following passage from a New Jersey court's opinion:

> On the death of a very young child . . . at least some facts can be shown to aid in estimating damages as, for example, its mental and physical condition.

> But not even these scant proofs can be offered when the child is stillborn. It is virtually impossible to predict whether the unborn child, but for its death, would have been capable of giving pecuniary benefit to its survivors. We recognize that the damages in any wrongful death action are to some extent uncertain and speculative. But our liberality in allowing substantial damages where the proofs are relatively speculative should not preclude us from drawing a line where the speculation becomes unreasonable.

*Id.* at 431, 358 S.E.2d at 493-94 (quoting *Graf v. Taggert*, 204 A.2d 140, 144 (N.J. 1964)). While we acknowledge that with young children proof of future damages involves a significant degree of speculation, we decline to hold that young children cannot recover for loss of earning capacity because they are injured so early in life,' where there is sufficient evidence offered so that such damages are not unreasonably speculative. Whitney Kirk was two years and eleven months

old when the accident occurred. Plaintiffs presented sufficient evidence, including testimony and medical records pertaining to Whitney's mental and physical condition prior to her injury, to provide the jury with a reasonable basis upon which to estimate damages of Whitney's lost earnings.

[2] Defendants' further contend that the court erred in allowing expert testimony as to whether Whitney would attend college and the effect of scarring on her future employability. Again, we disagree. As noted above, some speculation is inherent in the determination of loss of earning capacity. *Bahl*, 138 N.C. App. at 125, 530 S.E.2d at 351. Furthermore, G.S. § 8C-1, Rule 702(a) provides that an expert may testify "in the form of an opinion." Although opinion testimony cannot be offered if it is based on inadequate data, we have not deemed such testimony to be speculative where there is competent evidence in the record which shows the basis of that expert's opinion. *State v. Crumbley*, 135 N.C. App. 59, 519 S.E.2d 94 (1999). The record shows that the experts who testified as to Whitney's ability to attend college and her future employment opportunities all testified based on their own personal evaluations of Whitney, a review of her additional medical records, and their expertise and training. We hold, therefore, that the trial court did not err in admitting this testimony.

## II.

[3] Defendants also assign error to the denial of their motion for directed verdict as to Susan Fox-Kirk's negligent infliction of emotional distress claim. A motion for a directed verdict can be granted only if evidence is insufficient, as a matter of law, to support a verdict for the nonmoving party. *Goodwin v. Investors Life Insurance, Co.*, 332 N.C. 326, 419 S.E.2d 766 (1992). To make out a claim for negligent infliction of emotional distress, a plaintiff must produce evidence that the defendant was negligent, that it was foreseeable to the defendant that his negligence would cause the plaintiff severe emotional distress, and that the conduct, in fact, caused severe emotional distress. *Johnson v. Ruark Obstetrics*, 327 N.C. 283, 395 S.E.2d 85, *reh'g denied*, 327 N.C. 644, 399 S.E.2d 133 (1990).

In the case before us, plaintiff's burden of showing negligence was met by defendants' stipulation as to negligence. We also believe that plaintiff has shown adequate evidence she suffered severe emotional distress to survive a motion for directed verdict. Severe emotional distress means "any emotional or mental disorder, such as . . . neurosis, psychosis, chronic depression, phobia, or any other type of

severe and disabling emotional or mental condition which may be generally recognized and diagnosed by professionals trained to do so." *Id.* Plaintiff presented evidence from her psychiatrist of diagnosable mental health conditions.

At issue is whether there was sufficient evidence to show that it was foreseeable to defendant that his negligence would cause the plaintiff severe emotional distress. The complaint in this case seeks recovery for Susan's emotional distress arising from her concern for Whitney. Therefore, we must determine whether it was foreseeable to defendant that his negligent act which injured Whitney would cause Susan severe emotional distress.

The Supreme Court has held that a parent-child relationship, in itself, is not sufficient for a defendant to foresee that injury to one party caused by the defendant's negligence would cause emotional distress to the other. *Hickman v. McKoin,* 337 N.C. 460, 446 S.E.2d 80 (1994); *Gardner v. Gardner,* 334 N.C. 662, 435 S.E.2d 324 (1993). Some factors to be considered in making the foreseeability determination, where the claim is based on concern for another's welfare, include (1) plaintiff's proximity to defendant's negligent act, (2) the relationship between the plaintiff and the injured person, and (3) whether plaintiff personally observed the negligent act. *Ruark,* 327 N.C. at 305, 395 S.E.2d at 98. A determination of foreseeability is done on a case-by-case basis and "[a]lthough the question of foreseeability is generally for the jury, the trial judge is required to dismiss the claim as a matter of law upon a determination that the injury is too remote." *Wrenn v. Byrd,* 120 N.C. App. 761, 765, 464 S.E.2d 89, 92 (1995), *disc. review denied,* 342 N.C. 666, 467 S.E.2d 738 (1996).

In *Gardner,* the Court affirmed summary judgment where the plaintiff mother was not present at the accident scene but learned of the accident by telephone and saw her son undergoing resuscitation in the emergency room prior to being told of his death. 334 N.C. at 666-67, 435 S.E.2d at 328. The Court said:

Plaintiff was not, however, in close proximity to, nor did she observe, defendant's negligent act. At the time defendant's vehicle struck the bridge abutment, plaintiff was at her mother's house several miles away. This fact, while not in itself determinative, unquestionably militates against defendant's being able to foresee, at the time of the collision, that plaintiff would subsequently suffer severe emotional distress as a result of his accident. Because she was not physically present at the time of

**FOX-KIRK v. HANNON**

[142 N.C. App. 267 (2001)]

defendant's negligent act, plaintiff was not able to see or hear or otherwise sense the collision or to perceive immediately the injuries suffered by her son. Her absence from the scene at the time of defendant's negligent act, while not in itself decisive, militates against the foreseeability of her resulting emotional distress.

*Id.* Unlike the mother in *Gardner*, Susan Fox-Kirk was present in the car, personally observed defendant's negligent act, and immediately perceived the injuries suffered by her daughter. Applying the factors delineated by the Court in *Ruark* to the facts of this case and considering the Court's dicta in *Gardner*, we believe there is sufficient evidence that defendant could foresee that his negligent act would cause plaintiff emotional distress. Thus, we find no error in the denial of defendants' motion for directed verdict.

III.

**[4]** Defendants assign error to the trial court's admission of the 1 July 1998 letter from Dr. Chandler to plaintiffs' counsel. Defendants contend that the court failed to make the requisite findings and conclusions. We agree.

The trial court admitted the letter pursuant to N.C.R. Evid. 804(b)(5), which is the residual exception to the hearsay rule that applies when a declarant is unavailable. In *State v. Triplett*, 316 N.C. 1, 340 S.E.2d 736 (1986), the Supreme Court stated that a trial court must make the following determinations when admitting evidence pursuant to Rule 804(b)(5): (1) that proper notice was given to the opponent about the evidence and the desire to have it admitted pursuant to 804(b)(5); (2) that no other hearsay exception applies to the statement; (3) that the statement possesses " 'equivalent circumstantial guarantees of trustworthiness' " to the enumerated hearsay exceptions; (4) that the statement is material; (5) that the "statement 'is more probative on the point for which it is offered than any other evidence' " which could be otherwise produced; and (6) that " 'the general purposes of [the] rules [of evidence] and the interests of justice will best be served by admission of the statement into evidence.' " *Id.* at 9, 340 S.E.2d at 741 (quoting N.C. Gen. Stat. § 8C-1, Rule 804(b)(5)).

The admissibility of Dr. Chandler's medical records and correspondence was first addressed by Judge Smith in his 29 July 1998 pre-trial order. In the order, Judge Smith concluded, *inter alia*:

3. The written hearsay statements of Dr. Mark C. Chandler, including all medical and psychiatric records and bills generated or maintained by Dr. Mark C. Chandler, physician's notes/progress notes, memoranda, patient reports, evaluations, performance tests, history, diagnosis, treatment, prognosis, opinions, narratives, and correspondence relating to Whitney Kirk have sufficient guarantees of trustworthiness, are evidence of a material fact, are more probative on the point for which they may be offered than any other evidence which the defendants can procure through reasonable efforts, and the general purposes of the North Carolina Rules of Evidence and the interests of justice will best be served by the admission of such hearsay statements into evidence as exceptions to the hearsay rule under the rule of Rule 804(a) and Rule 804(b)(5) of the North Carolina Rules of Evidence.

He then ordered that:

2. The above referenced hearsay statements of Dr. Mark C. Chandler are not excluded by the hearsay rule and same are admissible into evidence at the trial herein under Rule 804(a) and Rule 804(b)(5) Other Exceptions, without reference to the reasons for the unavailability of Dr. Mark C. Chandler as a witness.

3. The ruling of the Court as contained in this order is made and intended as a ruling of inclusion upon the offer of such hearsay statements by the defendants at trial herein and is not made nor intended as a ruling to allow for the admission of such hearsay statements upon offering of same by the plaintiffs.

Neither party assigns error to Judge Smith's order, therefore, it is not directly at issue on this appeal. At issue, however, is whether Judge Balog's reference to these findings at trial when allowing plaintiffs to admit a portion of the 1 July 1998 letter from Dr. Chandler is sufficient. In granting plaintiffs' motion to admit the letter into evidence, Judge Balog made the following statement:

I believe that the July 1 report or letter is part of the medical record proposed and should be admitted with the deletion of the first paragraph. Finding that it is part of Dr. Chandler's medical records, and for the same reasons as stated in Judge Smith's order with regard to hearsay on Dr. Chandler's unavailability find-

ing that he's not unavailable by any reason of the plaintiff and, therefore, his entire medical records should be admitted.

Initially, we find no error in the trial court's reference to the preliminary order because it pertained to the same evidence, i.e., Dr. Chandler's medical records and correspondence. Moreover, Judge Smith's limitation in his order to evidence offered by defendants did not limit the trial judge from extending the hearsay exclusion to the same evidence offered by plaintiffs.

Nevertheless, Judge Smith made insufficient findings in the preliminary order to comply with the requirements set out by the Court in *Triplett*, and, therefore, Judge Balog erred in relying upon those findings. *Id.* at 9, 340 S.E.2d at 741. In *Triplett*, the Court stated "[t]he trial judge also must include in the record his findings of fact and conclusions of law that the statement possesses 'equivalent circumstantial guarantees of trustworthiness.'" *Id.* (citation omitted). In making a determination of trustworthiness, the trial judge must consider factors such as: (1) "the declarant's motivation to speak the truth"; (2) "whether the declarant has ever recanted the statement," and (3) the character and nature of the statement. *Id.* at 10-11, 340 S.E.2d at 742. Although Judge Smith concluded in his preliminary order that the records possessed the requisite guarantee of trustworthiness, he found no facts to support such a conclusion. The sole finding with regard to the records and correspondence was:

> Dr. Chandler has provided written reports and other medical records detailing his treatment and expert opinions regarding Whitney Kirk.

Before admitting the 1 July letter in reliance on Judge Smith's preliminary order, Judge Balog needed to either ensure that the order contained sufficient findings to render the letter admissible pursuant to the Rule 804(b)(5) test set forth in *Triplett*, or to hear evidence and make such findings himself. The trustworthiness of the 1 July letter was at issue; defendants argued that the letter represented a change in opinion by Dr. Chandler with regard to whether Whitney Kirk suffered a brain injury, and that by concurring with his partner, Dr. C. Thomas Gualtieri, it was Dr. Chandler's intent to avoid having to testify. There are no findings in either Judge Smith's or Judge Balog's rulings regarding the trustworthiness of the letter to permit this Court to determine whether it was properly admitted pursuant to Rule 804(b)(5), and we must therefore hold that the trial court erred in relying on the earlier order in admitting the letter.

The next question we must address is whether the erroneous admission of the 1 July letter was prejudicial. A major issue at trial was whether Whitney Kirk sustained a traumatic brain injury. Dr. Chandler was Whitney's treating physician beginning in October 1995, three months after the accident. He had regular, almost monthly, visits with Whitney until September 1996, and then treated her again in 1997 and 1998. Until the 1 July 1998 letter, Dr. Chandler's notes, correspondence and medical records indicated that he did not see signs of a brain injury. In the 1 July letter, Dr. Chandler indicated for the first time that a brain injury was "more likely."

At trial, five experts testified regarding whether Whitney suffered a traumatic brain injury. Dr. Gualtieri, a neuropsychiatrist in the same practice group as Dr. Chandler, evaluated Whitney for the first time in December 1997 and diagnosed her as having a brain injury. Dr. Cynthia Wilhelm, a psychologist who evaluated Whitney Kirk in late 1997 or early 1998 and prepared a life care plan, testified that she is not a medical doctor but that she concurs with the traumatic brain injury diagnosis. Dr. Gail Spiridigliozzi, a child psychologist who evaluated Whitney in March 1996 and in October 1997, testified that her findings after her second evaluation of Whitney at age five were consistent with a diagnosis of a traumatic brain injury. Defendants offered the testimony of two experts, Dr. Marcel Kinsbourne, a pediatric neurologist, and Dr. Frank Wood, a neurologist, both of whom testified that there were no signs that Whitney Kirk had sustained a traumatic or permanent brain injury.

In light of the conflicting testimony by these experts at trial, the opinion of Dr. Chandler, Whitney's treating medical doctor for more than two years after the accident, as to whether she suffered a traumatic brain injury, likely carried significant weight. Therefore, we must conclude that admission of the 1 July letter without the requisite findings of trustworthiness as required in *Triplett* was prejudicial error, entitling defendants to a new trial as to the claims of Whitney Kirk.

## IV.

[5] Defendants also assign error to the trial court's overruling their objections to plaintiffs' "golden rule" argument. In his closing argument, plaintiffs' counsel made various statements which asked the jurors to put themselves in the position of plaintiff Whitney Kirk. For example, counsel argued:

**FOX-KIRK v. HANNON**

[142 N.C. App. 267 (2001)]

> What would you require us to pay you? Would you take $100 a day for it to live with that the rest of your life?

Defendants' objections were overruled.

Though the propriety of using "golden rule" statements in closing arguments in civil cases has not been addressed by our courts, the Supreme Court has held that closing arguments in a criminal case which ask the jury to put themselves in the position of the victim are improper. *State v. Perkins*, 345 N.C. 254, 481 S.E.2d 25, *cert. denied*, 522 U.S. 837, 139 L. Ed. 2d 64 (1997). It is noteworthy, however, that the Supreme Court held such "golden rule" expressions in the trial court's jury instructions to be erroneous. The Court noted:

> The question in any given case is not what sum of money would be sufficient to induce a person to undergo voluntarily the pain and suffering for which recovery is sought or what it would cost to hire someone to undergo such suffering, but what, under all the circumstances, should be allowed the plaintiff in addition to the other items of damages to which he is entitled, in reasonable consideration of the suffering necessarily endured. The amount allowed must be fair and reasonable, free from sentimental or fanciful standards, and based upon the facts disclosed.

*Dunlap v. Lee*, 257 N.C. 447, 452, 126 S.E.2d 62, 66-67 (1962) (quoting 15 Am. Jur. *Damages* § 72). The Court stated that such instructions "encourage verdicts based on sympathy in areas of the law in which jurors are already prone to sympathize." *Id.* Thus, we believe that in personal injury cases, as in criminal cases, a closing argument in which the jury is asked to put itself in the position of the injured party is improper.

At oral argument in this Court, plaintiffs' counsel conceded that such arguments should not have been made but contended that defendants were not prejudiced. Having already determined that a new trial should be granted as to the claims brought by Whitney Kirk, we need not determine whether the argument in this case, which related only to Whitney Kirk's claims, was prejudicial. Suffice it to say that counsel should avoid such arguments at re-trial.

## V.

[6] Defendants' next contend the court erred in refusing to consider juror affidavits which indicate that the jury rendered a quotient ver-

dict, and further erred in denying their related motion for a new trial. We disagree.

The law is well-settled that in order to impeach a jury's verdict as a quotient verdict, the evidence must come from sources other than the jurors themselves. *State Highway Commission v. Matthis*, 2 N.C. App. 233, 163 S.E.2d 35 (1968). Therefore, the trial court properly refused to consider the juror affidavits. Defendants have offered no other evidence to meet their burden of establishing that a quotient verdict has been rendered and the trial court did not err in denying defendants' motion for a new trial.

We have reviewed defendants' remaining assignments of error which pertain to the claims of Mark Kirk and Susan Fox-Kirk and determine that they are without merit. As to such claims, we find no error. Moreover, we do not need to address defendants' remaining assignments of error which pertain to Whitney Kirk as they may not recur at re-trial.

VI.

PLAINTIFFS' APPEAL

[7] Plaintiffs' sole argument on appeal is that the trial court erred in awarding attorneys' fees to defendants pursuant to G.S. § 6-21.5. The statute provides for an award of attorney's fees "if the court finds that there was a complete absence of a justiciable issue of either law or fact raised by the losing party in any pleading." The trial court awarded attorneys' fees for the cost of defending the claims brought against defendant Goodyear and for the cost of defending the negligent infliction of emotional distress claim brought by plaintiff Mark Kirk.

We first consider the claims brought against defendant Goodyear. To determine whether a claim is non-justiciable, the trial court may consider evidence developed after the pleadings have been filed. *Sunamerica Financial Corp. v. Bonham*, 328 N.C. 254, 258, 400 S.E.2d 435, 438 (1991). The test is whether the "party persisted in litigating the case after a point where he should reasonably have become aware that the pleading he filed no longer contained a justiciable issue." *Id.*

In this case, plaintiffs brought claims against defendant Goodyear for negligence via the theories of *respondeat superior* and negligent retention and hiring. At issue was whether defendant

Hannon was an agent of defendant Goodyear and whether defendant Goodyear exercised control over defendant Ragan. Defendants denied both an agency relationship and any exercise of control by defendant Goodyear in their answer. Plaintiffs sought further information on the relationship between the defendants in numerous interrogatories and depositions. The trial court found:

> 9. The non-existence of an employer-employee relationship between defendant Goodyear and defendant Hannon as well as the non-existence of an agency relationship between defendant Goodyear and defendant Brad Ragan was established through the pleadings *and course of discovery* such that the plaintiffs should reasonably have become aware that the Complaint they filed as to Goodyear no longer contained a justiciable issue (emphasis added).

The court then awarded, however, all attorneys' fees regarding discovery incurred by defendant Goodyear dating back to the time they received the *first* set of interrogatories. We believe this award is inconsistent with the trial court's finding that the non-existence of the requisite relationships was established through the defendants' answer *and course of discovery*. Accordingly, we remand to the trial court for findings as to when plaintiffs should have reasonably determined that their claim against Goodyear was not justiciable, and for an award of attorneys' fees from that point forward.

[8] As to the award of fees for the negligent infliction of emotional distress claim brought by Mark Kirk, we find no error. The trial court found:

> 2. At the time of the filing of the Complaint, almost two years after the accident date of July 22, 1995, plaintiff Mark Kirk had not sought any medical treatment or received any diagnosis for any condition that could support a claim for severe emotional distress as that term is defined by law.

> 3. Plaintiff Mark Chandler Kirk's claim for negligent infliction of emotional distress was therefore a nonjusticiable issue of both law and fact.

"A justiciable issue has been defined as an issue that is 'real and present as opposed to imagined or fanciful.' " *Id.* at 257, 400 S.E.2d at 437 (citations omitted). To show severe emotional distress, the plaintiff must forecast some evidence showing severe and disabling psychological problems. *Waddle v. Sparks*, 331 N.C. 73, 414 S.E.2d 22

(1992). The trial court found and we agree that plaintiff had no such evidence, since he had not sought medical treatment in the two year period of time between the accident and summary judgment disposition of the claim.

For the foregoing reasons, we hold there must be a new trial as to the claims of Whitney Kirk. We find no error in the trial of the claims of Susan Fox-Kirk and Mark Kirk. That portion of the trial court's 6 October 1998 order which taxes plaintiffs with attorneys' fees incurred in defense of plaintiffs' claims against defendant Goodyear is vacated and this cause remanded for a proper determination of such fees in accordance with this opinion; in all other respects, the 6 October 1998 order is affirmed.

Defendants' Appeal—No error in part; new trial in part.

Plaintiffs' Appeal—Affirmed in part, vacated in part, and remanded.

Chief Judge EAGLES and Judge HORTON concur.

Judge HORTON concurred in this opinion prior to 31 January 2001.