GERTRUDE CRISP, ACTING AS THE ADMINISTRATRIX OF THE ESTATE OF JAMES THOMAS LANE, DECEASED v. FRANCES LANE MEDLIN, INDIVIDUAL AND FRANCES LANE MEDLIN, ACTING AS ADMINISTRATRIX OF THE ESTATE OF FRANKLIN ODELL MEDLIN, DECEASED.

(Filed 28 April, 1965.)

**1. Automobiles § 41a—**

Negligence is not presumed from the mere fact of an accident, nor does the doctrine of *res ipsa loquitur* apply thereto, but it is not necessary that negligence be established by direct or positive evidence, it being sufficient if it be established by circumstantial evidence, either alone or in combination with direct evidence.

**2. Automobiles § 41p—**

The identity of the driver of a vehicle at the time of an accident may be established by circumstantial evidence.

**3. Automobiles § 41a—**

In order for circumstantial evidence to be sufficient to be submitted to the jury on the issue of negligence it is required that the facts from which negligence may be inferred be established by direct evidence and not be based, upon other inferences or presumptions, and that the evidence be sufficient to raise the legitimate inference of negligence from these established facts and not leave the matter in the realm of conjecture.

**4. Automobiles § 41p— Circumstantial evidence held insufficient for jury on question of whether defendant's intestate was driving.**

Evidence tending to show that defendant's intestate was seen driving his father's automobile, in which plaintiff's intestate was a passenger, some hour and a half prior to the accident, but that after the accident the body of plaintiff's intestate was found lying on the right shoulder of the highway near the automobile, that the body of defendant's intestate was not at the scene, without competent evidence that defendant's intestate had left the scene or his body taken therefrom, with further evidence that plaintiff's intestate had on occasion operated a car notwithstanding he had no driver's license, etc., *held* insufficient to warrant a finding by the jury that defendant's intestate was driving the automobile at the time of the wreck.

**5. Automobiles § 41a— Circumstantial evidence held insufficient to be submitted to jury on issue of negligence.**

Evidence tending to show merely that plaintiff's intestate was killed in a wreck, together with physical facts tending to show intestate was thrown

from the car and his body badly mutilated and evidence of other physical facts permitting an inference that the car was traveling at a very rapid rate of speed at the time of the accident, but without evidence of skid marks, the condition of the highway, traffic conditions, or that the scene was in a restricted speed zone, etc., *held* insufficient to be submitted to the jury on the issue of actionable negligence, since grievous injuries to passengers may be expected if a car traveling at a speed of 55 to 65 miles per hour suddenly turns over and wrecks, and the evidence leaves the cause of the wreck in mere speculation and conjecture.

**6. Trial § 22—**

Evidence which leaves the facts in issue in mere conjecture is insufficient to be submitted to the jury.

APPEAL by plaintiff from *Crissman, J.,* 14 September 1964 Civil Session of MOORE.

Action *ex delicto* to recover damages for an alleged wrongful death. From a judgment of compulsory nonsuit entered at the close of plaintiff's evidence, she appeals.

*W. Lamont Brown for plaintiff appellant.*
*Leath, Bynum, Blount & Hinson for defendant appellee.*

PARKER, J. Defendant Frances Lane Medlin admits in her answer that in November 1962 she owned a 1957 Chevrolet automobile as a family purpose automobile, and that Franklin Odell Medlin was a member of her family.

Plaintiff's evidence shows the following facts: On 12 November 1962 James Thomas Lane, a 15-year old boy, was living with his mother, Gertrude Crisp. About 10:30 p.m. on the night of this day her son left her home in a 1957 Chevrolet automobile driven by Franklin Odell Medlin for the purpose of helping his father, Curtis Medlin, who was a passenger in the automobile, clean out a well. They went to get James Lane because Franklin Medlin had hurt his foot. Gertrude Crisp had never seen her son James operate an automobile, except that she had seen him operate her automobile back and forth in her yard.

On the afternoon of 12 November 1962 Franklin and Curtis Medlin were cleaning out a well for Marvin Campbell. In the early part of the night of that day Franklin Medlin was hurt in doing this work. They left in a 1957 Chevrolet, which Franklin Medlin was driving. After 10:30 p.m. on the night of that same day they came back, Franklin Medlin was driving, and James Lane was in the automobile with them. They stayed at the well about one hour and fifteen minutes cleaning it out. Campbell did not see them leave, but around midnight, just before they left, he saw them in the automobile, and Franklin Medlin was

sitting under the steering wheel. Curtis Medlin had been drinking, but if Franklin Medlin and James Lane had been drinking, Campbell could not tell it.

Curtis Medlin testified to this effect: About midnight, he, Franklin Medlin, and James Lane, with Franklin Medlin driving, left the Campbell home. They rode around for some time looking for somewhere to eat without finding any place open, and then Franklin drove the automobile to the home of one Morrison, so that Curtis could see him about putting a pump in his well. James and Franklin left the Morrison home in the automobile with Franklin driving. He remained in the house, and afterwards walked home. James Lane did not drive the automobile when he was in it, and he did not have an operator's license that he knew of. He used to own a Plymouth automobile, and James Lane drove it a "little bit" when he was drinking.

Nancy Lee Morrison testified to this effect: About 3 a.m. on 13 November 1962 she was asleep in her house. There was a knock on the door. Her husband got up and opened it, and she went to the door and saw Franklin under the steering wheel of the automobile and saw James sitting in the automobile on the right-hand side. Curtis came into her house to talk to her husband about putting a pump in his well. In a few minutes after arrival, Franklin drove the automobile away with James in it as a passenger. Her home is situate on U. S. Highway #1 about 12½ miles north of Southern Pines.

About 4:30 a.m. on 13 November 1962, Robert Samuels, a State highway patrolman, arrived at the scene of an automobile wreck on U. S. Highway #1 about two miles north of the town of Southern Pines. He does not know what time the wreck occurred. There was a left-hand curve in the highway. He saw a 1957 Chevrolet automobile on its left side sitting on the right-hand shoulder of the highway traveling north. James Lane was dead, and his body was lying on the right shoulder of the highway near the automobile. His left arm was missing and was later found up in a tree about 18 feet above the ground. The tree was some distance from the body, but its exact distance he does not know. Franklin Medlin was not at the scene when he arrived. He testified: "I have not been able to determine who was driving or anything about the accident other than what I found when I got there."

Dr. Raymond J. Daugherty, a practicing physician in Southern Pines, on 13 November 1962 performed an autopsy upon the dead body of Franklin Odell Medlin. He testified: "He had a bruising and swelling of the brain; he had blood and spinal fluid about the brain; he had multiple fractures of his ribs; he had blood around his lungs on both sides, swelling of both lungs, and a bruise on the front side of the heart."

Negligence is not presumed from the mere fact that there has been an accident and a person has been injured or killed. *Grant v. Royal,* 250 N.C. 366, 108 S.E. 2d 627; *Mills v. Moore,* 219 N.C. 25, 12 S.E. 2d 661.

The identity of the driver of an automobile at the time of an accident may be established by circumstantial evidence. *Yates v. Chappell,* 263 N.C. 461, 139 S.E. 2d 728; *Bridges v. Graham,* 246 N.C. 371, 98 S.E. 2d 492.

It is also true that negligence need not be established by direct and positive evidence, but may be established by circumstantial evidence, either alone or in combination with direct evidence. *Lane v. Dorney,* 252 N.C. 90, 113 S.E. 2d 33; *Lane v. Bryan,* 246 N.C. 108, 97 S.E. 2d 411.

"A basic requirement of circumstantial evidence is a reasonable inference from established facts. Inference may not be based on inference. Every inference must stand upon some clear and direct evidence, and not upon some other inference or presumption." *Lane v. Bryan, supra.*

The plaintiff, to carry her case to the jury against defendant on the ground of actionable negligence, must offer evidence sufficient to take the case out of the realm of conjecture and into the field of legitimate inference from established facts. *Williamson v. Randall,* 248 N.C. 20, 102 S.E. 2d 381.

The doctrine of *res ipsa loquitur* is not applicable upon a mere showing of the wreck of an automobile on the highway. *Lane v. Dorney, supra.*

There was no eye witness account of the wreck here. In appraising plaintiff's evidence for the purpose of determining whether there is any evidence of negligence on the part of Franklin Odell Medlin to warrant the submission of the case to the jury, if there is sufficient evidence that he was driving the automobile at the time of the fatal wreck, we are driven to a consideration of the physical facts shown by the evidence. "Even so, physical facts are sometimes more convincing than oral testimony." *Yost v. Hall,* 233 N.C. 463, 64 S.E. 2d 554.

A few minutes after 3 a.m. on 13 November 1962 Franklin Medlin and James Lane left the Morrison home, which is situate on U. S. Highway #1 about 12½ miles north of Southern Pines, in a 1957 Chevrolet automobile, with Medlin driving. If they traveled towards the town of Southern Pines on U. S. Highway #1, they traveled south. About 4:30 a.m., or about one hour and twenty minutes after they left the Morrison home, Robert Samuels, a State highway patrolman, arrived at the scene of an automobile wreck on U. S. Highway #1 about two miles north of the town of Southern Pines. He saw there a 1957 Chevrolet automobile on its left side sitting on the right-hand shoulder of the highway traveling north. There is no evidence in the record as to the

direction the front part of the wrecked automobile was pointing. The dead body of James Lane was lying on the right shoulder of the highway near the automobile. The body of Franklin Medlin was not at the scene. Highway patrolman Samuels testified: "The person of Franklin Odell Medlin had been removed to the hospital when I got there." This is bound to be based on hearsay, and not of probative value. There is no competent evidence in the record that Franklin Medlin left the scene of the wrecked automobile or that his body was carried away from the scene of the wrecked automobile after the wreck. If Franklin Medlin was in the automobile when it wrecked, there is no evidence in the record as to where his body was in reference to the wrecked automobile immediately after the wreck, or if it was removed from the scene of the wreck, when it was removed. There is no evidence in the record as to the exact time the wreck occurred. There is evidence that Curtis Medlin used to own a Plymouth automobile, and that James Lane drove it a "little bit" when he, Curtis Medlin, was drinking. James Lane's mother had seen him operate her automobile back and forth in her yard. Plaintiff has not offered sufficient evidence to warrant a finding by the jury that Franklin Medlin was driving the automobile at the time of the fatal wreck.

Near the scene of the wreck there is a left-hand curve on the highway. Whether it was a sharp curve or not the evidence does not show. There is no evidence in the record of any skid marks or tracks on the highway. That the automobile left the highway seems probable by reason of the fact that James Lane's left arm was found in a tree about 18 feet above the ground some distance from where his body was. The record does not disclose where the wrecked automobile was in respect to the curve in the highway when it wrecked. There is no evidence in the record as to whether the highway was slick, wet, or dry at the time of the wreck, or the condition of the highway. Was the Chevrolet automobile forced off the highway to avoid a collision with an approaching automobile suddenly pulling into its lane of traffic, or was it caused to leave the highway by reason of being sideswiped by a passing automobile, or was its wreck due to a tire blowout? The record contains no evidence answering these questions. The grievous injuries received by James Lane and by Franklin Medlin, if he was in the automobile at the time of the wreck, indicate that the automobile was traveling at a very rapid speed when it wrecked. There is no evidence in the record that the automobile was traveling at the time of the wreck in a restricted speed zone. At the time of the wreck was the automobile traveling in a 55-mile speed zone, or a 60-mile speed zone, or a 65-mile speed zone? G.S. 20-141. If an automobile is traveling at a speed of 55 or 60 or 65 miles an hour and suddenly turns over and wrecks, it may be anticipated that

its occupants will receive grievous injuries or be thrown out of the auto-mobile if not held in by safety belts. The evidence of speed of the wrecked automobile here can only be inferred from the physical facts shown by the evidence. In our opinion, and we so hold, the mere fact that it can be reasonably inferred from the evidence that the Chevrolet automobile was traveling at a very rapid speed when it wrecked is not sufficient to permit a jury to find that such speed caused its wreck, and that its driver was guilty of actionable negligence. The headnote of *Fuller v. Fuller* in our Reports, 253 N.C. 288, 116 S.E. 2d 776, states:

> "Evidence tending only to show that the driver of a truck veered gradually to the left and ran off the hard surface at a point where the highway was straight and that the truck continued on until it struck a tree some 150 feet after it had left the highway, resulting in the death of the driver and injury to the two passengers, with further evidence that the day was clear and the road dry and that there was no other traffic at this point, is insufficient to show that the injury to the passengers was the result of the negligence of the driver * * *."

In *Ivey v. Rollins*, 250 N.C. 89, 108 S.E. 2d 63, the Court said:

> "The only established fact is that there was a collision when the automobile in which plaintiff's intestate was riding, traveling in its proper lane, 'suddenly swerved sharply' head-on into the bridge abutment. What caused it nobody knows. The cause of it rests in the realm of conjecture, speculation and guesswork."

"A cause of action must be something more than a guess." *Lane v. Bryan, supra.* "We cannot resort to a choice of possibilities: that is guesswork, not decision." *Hanrahan v. Walgreen Co.*, 243 N.C. 268, 90 S.E. 2d 392.

In *Brown v. Kinsey*, 81 N.C. 245, it is stated: "The rule is well settled that if there be no evidence, or if the evidence be so slight as not rea-sonably to warrant the inference of the fact in issue or furnish more than materials for a mere conjecture, the Court will not leave the issue to be passed on by the jury." This has been quoted with approval in *Byrd v. Express Co.*, 139 N.C. 273, 51 S.E. 851, and in *Poovey v. Sugar Co.*, 191 N.C. 722, 133 S.E. 12, where Brogden, J., the writer of the opinion, adds in apt and accurate words: "This rule is both just and sound. Any other interpretation of the law would unloose a jury to wander aimlessly in the fields of speculation."

The judgment of compulsory nonsuit below is
Affirmed.