ROYCE E. STUTTS, ADMINISTRATOR OF THE ESTATE OF DEBORAH LEE STUTTS
v. DUANE LEE ADAIR

No. 8810SC974

(Filed 20 June 1989)

1. **Automobiles and Other Vehicles § 79.2— intersection— defendant making left turn—struck by plaintiff—plaintiff's speed**

   The trial court did not err in a wrongful death action arising from an automobile collision at an intersection by refusing to instruct the jury on the duty of plaintiff's decedent, Ms. Stutts, not to drive faster than was reasonable or prudent under existing conditions or on her duty to decrease speed to avoid the collision where defendant presented no evidence that Ms. Stutts may have breached her duty to drive at a reasonable and prudent speed. Defendant's contention that the configuration of stoplights, a fast-food mart, and police vehicles in a bank parking lot heightened Ms. Stutts' duty under N.C.G.S. § 29-141(a) and required the trial judge to submit defendant's requested instruction notwithstanding the absence of evidence about her speed was rejected; none of the evidence indicated that Ms. Stutts saw or should have seen defendant turn in front of her in time to slow down or sound her horn, so that her failure to do these things was not evidence that she exceeded a prudent speed; extensive damages to the vehicles is not by itself evidence of excessive speed; and the fact that a person dies in an accident is not evidence of that person's contributory negligence.

2. **Damages § 16.3— automobile collision—wrongful death action—evidence of lost income**

   The trial court did not err in a wrongful death action arising from an automobile accident by admitting evidence of income lost by the decedent's parents as a result of decedent's death where plaintiff's lawyer used the word estate in his question to the expert. Decedent died unmarried and childless and her beneficiaries under the wrongful death statute were her parents. The record indicates that the jury understood the proper method of ascertaining the beneficiaries under the wrongful death statute and understood that any damages awarded were not to be based upon the pecuniary injury to the estate.

3. **Death § 7.4— automobile accident—lost income to parents of decedent child—admissible**

The trial court did not err in a wrongful death action arising from an automobile collision by allowing an expert to testify as to the amount of decedent's income lost to her parents where the decedent was an adult child who never married and who was childless. In a wrongful death action involving an adult child, there is no reason to demand actual support of the parents as the sole ground for any recovery of lost income and, because this is not a case of sheer speculation, the trial judge should enjoy a wide latitude to admit any evidence tending to demonstrate the parents' expectations to the child's income.

4. **Death § 7.6— automobile accident—lost income to parents of decedent—submission of issue harmless error**

Although the trial court erred in a wrongful death action by submitting the issue of damages for income lost to decedent's parents because there was no evidence before the judge that decedent had ever expressed an intent to provide any of her income to her parents, the error was harmless because defendant had made and won a motion in limine to exclude any testimony about statements made by decedent relative to her intent to provide for her parents in the future. Having precluded plaintiff from introducing any evidence of decedent's desire to provide for her parents, defendant cannot now complain that plaintiff offered no evidence of the parents' reasonable expectations; moreover, although plaintiff's expert testified that the lost income to the parents was approximately $105,000, the jury awarded plaintiff $55,000 and had been instructed that it could award damages for other items in addition to lost income.

APPEAL by defendant from *Herbert Small, Judge*. Judgment entered 17 March 1988 in Superior Court, WAKE County. Heard in the Court of Appeals 21 February 1989.

*Page, Page & Webb, by John T. Page, Jr. and Alden B. Webb, for plaintiff-appellee.*

*LeBoeuf, Lamb, Leiby & MacRae, by George R. Ragsdale and Albert D. Barnes, for defendant-appellant.*

## STUTTS v. ADAIR

[94 N.C. App. 227 (1989)]

BECTON, Judge.

This is a civil case in which plaintiff, Royce E. Stutts, as administrator of the estate of Deborah Lee Stutts, his daughter, seeks to recover damages from defendant, Duane Lee Adair, for the wrongful death of Ms. Stutts. Following a trial, a jury found that defendant negligently caused Ms. Stutts' death and awarded plaintiff damages of $55,000. From the judgment entered, defendant appeals. We affirm.

On 12 March 1986, Deborah Stutts was driving south on Falls of the Neuse Road in Raleigh. At the intersection of Falls of the Neuse and Newton Roads, her automobile collided with a pick-up truck driven by Mr. Adair. Ms. Stutts died from the injuries she suffered in the accident.

The evidence at trial showed that Mr. Adair, at the time of the crash, was attempting to turn left, from the northbound lane of Falls of the Neuse Road, onto Newton Road. Traffic at this intersection is governed by signal lights. Plaintiff's evidence tended to show that the lights regulating the north-south flow of traffic on Falls of the Neuse Road were a solid green when Mr. Adair attempted to turn. A sign instructed left-turning vehicles to yield to through traffic when the light was solid green. Mr. Adair and his father, a passenger in the truck, testified that at the time of the accident, the light directing vehicles in their lane showed a green arrow.

The evidence further showed that Ms. Stutts was 34 years old at the time of her death, and that she was unmarried and childless. Among her survivors were Royce and Ophelia Stutts, her parents. Ms. Stutts was an employee of First Citizens Bank and Trust Company, and she held a week-end job as a bartender.

Other facts necessary to our disposition of this case will be discussed as they relate to defendant's assignments of error, to which we now turn.

I

[1] Defendant first assigns error to the trial judge's refusal to instruct the jury on Ms. Stutts' duty not to drive at a speed greater than was reasonable and prudent under the conditions existing at the time of the accident. See N.C. Gen. Stat. Sec. 20-141(a) (Supp. 1988). In a related exception, defendant argues that the

judge erred by failing to instruct on Ms. Stutts' duty to decrease her speed to the extent necessary to avoid the collision. *See* N.C. Gen. Stat. Sec. 20-141(m) (Supp. 1988).

It is true that a person must "at all times drive with due caution and circumspection" and may not exceed a reasonable and prudent speed dictated by the prevailing conditions. *Kolman v. Silbert*, 219 N.C. 134, 137, 12 S.E. 2d 915, 917 (1941). At the same time, it is "the duty of the trial judge . . . to instruct the jury on the law as it applies to the substantive features of the case *arising on the evidence." Millis Constr. Co. v. Fairfield Sapphire Valley, Inc.*, 86 N.C. App. 506, 509, 358 S.E. 2d 566, 568 (1987) (emphasis added and citation omitted). Defendant contends that he proffered "abundant evidence" at trial to warrant an instruction on the duty required by Section 20-141(a). He argues that the following evidence suggested a breach by Ms. Stutts of her duty to observe a reasonable and prudent speed: (1) the physical damage to the two vehicles; (2) the death of Ms. Stutts; (3) the "complex series of stop lights" at Falls of the Neuse and Newton Roads; (4) the presence at that intersection of a fast-food mart "with its potential for cars attempting to enter or exit from the northbound lanes"; (5) "numerous police officers and vehicles" in the parking lot of a First Citizens Bank building at the corner of Falls of the Neuse and Newton and yellow tape cordoning off the building (the evidence at trial showed the bank had been robbed approximately one hour before the accident; this branch of First Citizens Bank was not the one at which Ms. Stutts worked); and (6) Ms. Stutts' failure to slow down or to sound her horn when Mr. Adair turned into her path.

We have reviewed the testimony and certain of the exhibits presented at trial, and we agree with the trial judge that defendant presented no evidence that Ms. Stutts may have breached her duty to drive at a reasonable and prudent speed. We reject defendant's contention that the configuration of the stoplights, the fast-food mart, and the police vehicles in the bank parking lot "heightened" Ms. Stutts' duty under Section 20-141(a) and required the judge to submit defendant's requested instruction notwithstanding the absence of any evidence about Ms. Stutts' rate of speed. Further, none of the evidence indicated that Ms. Stutts saw, or should have seen, defendant turn in front of her in time for her to slow down or to sound her horn. Thus, her failure to do either of these was not evidence that she exceeded a prudent speed.

## STUTTS v. ADAIR

[94 N.C. App. 227 (1989)]

Defendant has laid much emphasis on the damage sustained by the vehicles involved in this accident. He also finds Ms. Stutts' death from the injuries she suffered in the crash as probative of the "force of impact" and thus, of her rate of speed. At trial, defendant introduced photographs taken after the collision of Ms. Stutts' car and of Mr. Adair's truck, and these photographs have been reviewed by us. Defendant contends that "the physical evidence of destruction is a compelling testament to the decedent's excessive speed." We disagree. While "[t]he physical facts at the scene of an accident may disclose that the operator of the vehicle was traveling at excessive speed," *Keller v. Security Mills of Greensboro, Inc.*, 260 N.C. 571, 573, 133 S.E. 2d 222, 224 (1963) (citations omitted), extensive damage to the vehicles is not, by itself, evidence of such speed. *See Beauchamp v. Clark*, 250 N.C. 132, 136, 108 S.E. 2d 535, 538 (1959) (fact that truck and tractor-trailer collided with such force as to substantially damage vehicles did not require conclusion that truck was operated at such high rate of speed as to demonstrate violation of statute or rule of prudent person). "An automobile develops enough energy at 30 miles per hour to lift it 30 feet off the ground." 10 Am. Jur. Proof of Facts 748. At 20 miles per hour, a vehicle will strike a stationary object with the same force as if it had been dropped off a platform 13.5 feet high. *Id.* at 747. Absent more, we do not infer excessive speed from the vehicular damage in this case.

The fact that a person dies in an accident, moreover, is not evidence of that person's contributory negligence. *See Crisp v. Medlin*, 264 N.C. 314, 317, 141 S.E. 2d 609, 611 (1965) (negligence not presumed from fact that a person has been killed). In *Crisp*, our Supreme Court said that the "grievous injuries" suffered by the decedents "indicate[d] that the automobile was traveling at a very rapid speed when it wrecked." *Id.* at 318, 141 S.E. 2d at 612. Ms. Stutts had a deep laceration across her forehead following the accident. No evidence indicated that such an injury would have resulted only from a very rapid speed of travel. We do not infer from her wound that Ms. Stutts was exceeding a reasonable speed when she collided with defendant's truck.

A trial judge is not justified in instructing the jury on a principle of law not applicable to the evidence merely because a party pleads the breach of that law. *Sugg v. Baker*, 258 N.C. 333, 337, 128 S.E. 2d 595, 597 (1962). Before the judge may submit the breach of a particular law or duty for jury determination, there must

STUTTS v. ADAIR

[94 N.C. App. 227 (1989)]

be both allegation and proof of the breach. *Id.* at 337, 128 S.E. 2d at 597-98. Because, in this case, there was no evidence tending to indicate Ms. Stutts' speed at the time of the accident, we hold that the judge did not err by refusing to instruct the jury about Ms. Stutts' duty to drive at a reasonable and prudent speed.

In the same vein, we reject defendant's contention that the judge was required to instruct the jury about Ms. Stutts' duty to decrease her speed to the extent necessary to avoid the collision. Nothing in the record indicates that Ms. Stutts had the opportunity to slow down when Mr. Adair entered her path of travel. Rather, the evidence indicates that Mr. Adair, without the right of way, turned into Ms. Stutts' lane. There was no evidence that Ms. Stutts saw, or should have seen, Mr. Adair in time to react to his presence. *See State v. Worthington*, 89 N.C. App. 88, 92, 365 S.E. 2d 317, 320 (1988), *appeal dismissed*, 322 N.C. 115, 367 S.E. 2d 134 (1988) (Section 20-141(m) does not impose liability except in cases in which a reasonable and ordinarily prudent person *could*, and would, have decreased speed). The evidence being insufficient to suggest a breach of the duty to decrease speed, the judge correctly refused to instruct on that duty.

Defendant cites our recent decision in *Hinnant v. Holland*, 92 N.C. App. 142, 374 S.E. 2d 152 (1989), *disc. rev. denied*, 324 N.C. 335, 378 S.E. 2d 792 (1989), for the proposition that, in a traffic-accident case, a judge's failure to give an instruction on the duty to decrease speed is error. Defendant misreads *Hinnant*. In contrast to this case, evidence was adduced at the Hinnant trial about the speed of the vehicle. Guided by our Supreme Court's holding in *Pittman v. Swanson*, 255 N.C. 681, 122 S.E. 2d 814 (1961), a case in which evidence of speed was also introduced at trial, we held in *Hinnant* that when the evidence suggests a breach of the duty to decrease speed, it is error for the trial judge to fail to submit that instruction, even if the judge *does* instruct on the driver's duty to observe a reasonable and prudent speed under the existing conditions. A critical distinction between this case and *Hinnant* is that, here, no evidence concerning Ms. Stutts' speed was introduced at trial. Neither *Hinnant* nor *Pittman* abrogate the requirement that an instruction must arise from the evidence presented to the jury.

We overrule these assignments of error. For reasons stemming from our discussion here, we also overrule defendant's exceptions

to the judge's refusal to find Ms. Stutts contributorily negligent and to direct a verdict in defendant's favor.

## II

[2] Defendant's next assignments of error address the damages awarded in this case. He first argues that plaintiff introduced improper evidence about the income lost as a result of Ms. Stutts' death. Dr. J. Finley Lee testified as an expert in the field of economics and statistics. During direct examination, plaintiff's lawyer asked him, "Do you have an opinion as to the present value of the economic loss *to the estate* of Deborah Stutts[?]" (Emphasis added.) Defendant objected, and the judge overruled the objection. Dr. Lee testified that "the loss of net income" was approximately $105,881.

Defendant contends that the question posed by plaintiff, and Dr. Lee's answer, "apply an incorrect legal standard inconsistent with the North Carolina wrongful death statute [N.C. Gen. Stat. Sec. 28A-18-2 (1984 & Supp. 1987)]." Subsection (b)(4) of that statute allows damages for wrongful death "to the *persons* entitled to receive the damages recovered. . . ." (Emphasis added.) Defendant is correct that recovery of damages under the statute is to the beneficiaries of the decedent and not to the decedent's estate. *See Smith v. Mercer*, 276 N.C. 329, 334, 172 S.E. 2d 489, 492 (1970) (damages determinable in accordance with subsection (b)(4) "quite different" from damages determinable on basis of pecuniary injury suffered by decedent's estate).

Notwithstanding the phrasing of plaintiff's question to Dr. Lee, we think it plain from the record that both Dr. Lee and the jury understood the correct measurement of damages under the wrongful death statute. To determine damages under that statute, "the first step . . . is to identify the particular persons who are entitled to receive the damages. . . . " *Bowen v. Constructors Equip. Rental Co.*, 283 N.C. 395, 418, 196 S.E. 2d 789, 805 (1973). The same persons who would receive the decedent's personal estate under the Intestate Succession Act are the persons entitled to receive the damages recovered in a wrongful death action. Sec. 28A-18-2(a); *Bowen*, 283 N.C. at 414, 196 S.E. 2d at 805. Ms. Stutts died unmarried and childless; consequently, her beneficiaries under the wrongful death statute were her parents. *See* N.C. Gen. Stat. Sec. 29-15(3) (1984).

Dr. Lee testified on *voir dire* that he calculated the lost-income figure on the premise that the "residual" of Ms. Stutts' net income

stream—that amount remaining after self-maintenance and other expenses were factored out—would "have been the ability of Ms. Stutts, had she not died, [to] contribut[e] to . . . *her parents*." (Emphasis added.) More importantly, the judge, at great length, instructed the jury that Ms. Stutts' parents were her next of kin who would recover any damages that the jury awarded. *See Carver v. Carver*, 310 N.C. 669, 683, 314 S.E. 2d 739, 747 (1984) (trier of fact must be apprised of those who are to share in recovery). The judge likewise instructed the jury as to the life expectancies, based on mortuary tables, of Ms. Stutts and her parents, and he required the jury to determine, based on mortuary tables, and the health, constitution, and habits of the three people, whether the beneficiaries had a shorter life expectancy than did Ms. Stutts. He instructed the jury that if it found that Ms. Stutts' parents had shorter life expectancies, it was to determine the amount of the damages, if any, in light of those shorter expectancies. The judge correctly applied the wrongful death statute by instructing that "when the expectancy of a next of kin [is] shorter than that of the deceased, the award on the account of that next of kin is limited to the value of benefits that next of kin might have expected to receive during his or her lifetime." *See Bowen*, 283 N.C. at 419, 196 S.E. 2d at 805 (if jury found son's life expectancy greater than that of parents, recovery under statute necessarily would be limited to expectancy of last surviving parent).

We think the record indicates sufficiently that the jury understood the proper method of ascertaining the beneficiaries under the wrongful death statute and understood that any damages awarded were not to be based upon the pecuniary injury to Ms. Stutts' estate. We hold that Dr. Lee's testimony was not inadmissible because plaintiff's lawyer used the word "estate" in his question to Dr. Lee, and we overrule this assignment of error.

### III

Defendant next argues that the trial judge erred by instructing the jury that it could award damages to Ms. Stutts' parents for the loss of her net income. He contends that no relevant or competent evidence supported the submission of the instruction, and that the judge should have charged that the jury could award no damages on this basis. Defendant's argument is based on his reading of subsection (b)(4) of the wrongful death statute. That subsection provides, among other things, for the following:

(b) Damages recoverable for death by wrongful act include:

. . .

    (4) The present monetary value of the decedent to the persons entitled to receive the damages recovered, including but not limited to compensation for the loss of the *reasonably expected*:

        a. Net income of the decedent,

        b. Services, protection, care and assistance of the decedent . . .

        c. Society, companionship, comfort, guidance, kindly offices and advice of the decedent to the persons entitled to the damages recovered[.]

(Emphasis added.)

Defendant maintains that none of plaintiff's evidence established that Ms. Stutts' parents had any "reasonable expectations" to share in her income. In addition, he again challenges the admission of Dr. Lee's testimony, arguing that the statute forbids a presumption that the residue of the income stream would have gone to Ms. Stutts' beneficiaries. Defendant contends that, in cases such as this one, the statute requires that the beneficiaries' reasonable expectations must stem from a tangible manifestation of the adult child's intent to share her income, by such means as past support of the parents, a trust fund on their behalf, or a will.

A

[3] The Wrongful Death Act is designed "as fully as possible [to] compensate persons for the loss of their decedent," *Beck v. Carolina Power and Light Co.*, 57 N.C. App. 373, 381, 291 S.E. 2d 897, 902 (1982), *aff'd*, 307 N.C. 267, 297 S.E. 2d 397 (1982) (citation omitted), and we do not believe the legislature intended to provide a windfall to tortfeasors by imposing a single means by which parents might prove their reasonable expectations to their adult child's income. And although we recognize that "damage awards based on sheer speculation would render the wrongful death statute punitive in its effect . . . which is not what the legislature intended," *DiDonato v. Wortman*, 320 N.C. 423, 431, 358 S.E. 2d 489, 493 (1987) (citations omitted), the case before us involves an adult child of demonstrated earning ability whose lost-income stream was calculable.

We are mindful of *State v. Smith*, 90 N.C. App. 161, 368 S.E. 2d 33 (1988), *aff'd*, 323 N.C. 703, 374 S.E. 2d 866 (1989), in which this court recognized that parent beneficiaries are not entitled to recover damages for the lost income of their adult child absent some evidence that the parents had reasonable expectations to share in that income. However, we did not explore, in *Smith*, the kind of showing parents must make in order to recover under the statute.

Nor have we overlooked *Clark v. Inn West*, 324 N.C. 415, 379 S.E. 2d 23 (1989), in which our Supreme Court discussed damages for "loss of means of support" under the North Carolina Dram Shop Act, N.C. Gen. Stat. Secs. 18B-120 to -129 (1983). In a footnote, the Court noted that the parents of a minor who consumes alcohol and is then killed or injured are not "expressly" foreclosed, under the Dram Shop Act, from bringing an action against the business that served liquor to the minor. *Id.* at ---, 379 S.E. 2d at ---, n.2. Discussing whether parents might recover for lost support when their decedent is a minor, the Court said that

> . . . the statute does not preclude recovery by the parents for loss of support by their underage child, if the underage child in fact supported the parents. Here, however, the complaint alleges only that the decedent would have provided income and support for his parents in the future. Support cannot be lost until it is in fact provided. Thus, the complaint does not allege sufficient facts to establish the parents' actual dependence on the decedent for income and support.

*Id.*

Although the dram shop statute directs that "[d]amages for death shall be determined under the provisions of [subsection (b) of the Wrongful Death Act]," Sec. 18B-120(2), we do not think that *Clark* requires us to impose a showing of actual support in order for parents to recover a portion of their adult child's lost income under the wrongful death statute. First, an action brought under the Dram Shop Act is an action brought against the permittee or local Alcohol Beverage Control Board for negligently selling or furnishing alcohol to an underage person who, after becoming impaired, negligently operates a vehicle and causes injury. Sec. 18B-121. Dram shop actions are distinct from those which can be brought against the primary tortfeasor under the Wrongful Death Act. Second, any liability of the permittee or Alcohol Beverage

STUTTS v. ADAIR

[94 N.C. App. 227 (1989)]

Control Board is limited to $500,000. Sec. 18B-123. No such limitation on the amount recoverable exists under the wrongful death statute. Third, a requirement of actual past support to prove "reasonable expectations" jars with subsection (c) of the Wrongful Death Act, which specifies that "[a]ll evidence which reasonably tends to establish *any* of the elements of damages included in subsection (b) . . . is admissible. . . . " (Emphasis added.)

Further, we believe that policy considerations support a broader construction of the lost-income provision of the Wrongful Death Act than the Supreme Court in *Clark* accorded the "loss of means of support" language of the dram shop statute. These considerations argue against the burden defendant would have us place on parent beneficiaries. By way of example: A child grows up in poverty. Through scholarships, financial aid, and her parents' hard-earned assistance, she attends college and then professional school. She receives an offer of employment that promises to earn her a high salary. Her first desire, once she begins working, is to improve the lot of her parents. She, in fact, tells this intention to them or to others. Prior to commencing the new job, however, she is killed through the negligence of another. Under defendant's reading of subsection (b)(4), the parents recover nothing for their daughter's lost income, despite their reasonable expectations of sharing it.

It may be that adult children do not, typically, provide support to their parents while the latter are self-sufficient. Nevertheless, it seems accurate to suggest that the average adult child intends — and the average parents reasonably expect — that if and when the parents need financial assistance, the child will provide whatever monetary support she can. Indeed, North Carolina makes it a misdemeanor, punishable by fine, imprisonment, or both, for a person "of full age . . . having sufficient income . . . [to] neglect to maintain and support his or her . . . parents," without reasonable cause, in the event the parents, through illness or inability to work, are unable to support themselves. N.C. Gen. Stat. Sec. 14-326.1 (1986).

Along with these policy concerns, the rationale, rather than the holdings, in *DiDonato* and *Bowen*, supports a more liberal evidentiary standard for proving reasonable expectations to income when the decedent is an adult child. In *DiDonato*, our Supreme Court held that parents may not recover damages for lost income when the decedent is a viable fetus. The Court said that "[w]hen a child

is stillborn we can know nothing about its intelligence, abilities, interests and other factors relevant to the monetary contribution it might — or might not — some day have made to the beneficiaries in a wrongful death action . . . [and a] jury attempting to calculate an award for such damages would be reduced to 'sheer speculation.' " 320 N.C. at 431-32, 358 S.E. 2d at 494 (citation omitted).

In *Bowen*, the court addressed the entitlement of the parents of a seventeen-year-old child to recover damages under the Wrongful Death Act. In considering the net-income provision, the Court said this:

> In the present factual situation, Howard may have made no financial contributions to the support of his parents during their active years. It may be that the persons who would receive his net income if he had survived would be a wife and a child or children. During his years in college, and during the earlier years of his career and possible marriage, it may be more likely that financial aid would flow from his parents to Howard rather than from Howard to his parents.

283 N.C. at 420, 196 S.E. 2d at 806.

In contrast to both *DiDonato* and *Bowen*, this case concerns a 34-year-old adult whose financial worth was more realistically ascertainable. The degree of speculation feared in *DiDonato* and *Bowen* is not present in this case. In a wrongful death action involving an adult child, therefore, there is no reason to demand actual support of the parents as the sole ground for any recovery of lost income. Such a requirement would run counter to the remedial purpose of the statute and to the evidentiary provisions of subsection (c). The concrete manifestations of the child's intent to provide support, for which defendant argues, would obviously demonstrate that the parents had reasonable expectations to the child's income. In our view, however, such expectations could also be shown through less tangible means — for example, through the verbally-expressed intentions of the child.

Again, this is not a "sheer" speculation case. *DiDonato*, 320 N.C. at 430, 358 S.E. 2d 493 (citations omitted). *Some* speculation, however, must always be necessary. *See Beck*, 57 N.C. App. at 381, 291 S.E. 2d at 902. Indeed, "[i]t [is] difficult, if not impossible, to formulate a rule of general application for the measurement of . . . damages [under subsection (b)(4)]." *Bowen*, 283 N.C. at 419,

STUTTS v. ADAIR

[94 N.C. App. 227 (1989)]

196 S.E. 2d at 805. In our view, the trial judge should enjoy wide latitude, in a case such as this one, to admit any evidence tending to demonstrate the parents' expectations to the child's income.

An expert should not be precluded from valuing the decedent's lost income on the ground that he or she cannot testify whether any of that income would have gone to the parents. This court has said that expert testimony is virtually the only means a plaintiff has to demonstrate lost earnings. *Thorpe v. Wilson*, 58 N.C. App. 292, 298, 293 S.E. 2d 675, 679 (1982). Plaintiffs can offer additional evidence to establish what expectations, if any, the parents had to those earnings. "[T]he assessment of damages," for lost income, as for the other items of recovery enumerated in subsection (b)(4), can then "be left to the good sense and fair judgment of the jury — subject, of course, to the discretionary power of the judge to set its verdict aside when, in his opinion, equity and justice so require." *Brown v. Moore*, 286 N.C. 664, 673, 213 S.E. 2d 342, 348-49 (1975). We hold, therefore, that the trial judge did not err by allowing Dr. Lee to testify as to the amount of Ms. Stutts' lost income stream.

B

[4] Even though Dr. Lee's testimony was admissible, the trial judge erred by submitting the issue of damages for lost income because there was no evidence before the judge that Ms. Stutts had ever expressed an intent to provide any of her income to her parents. Under the particular circumstances of this case, however, the error was harmless.

Significantly, prior to the presentation of evidence, defendant made, and won, a motion *in limine* to exclude any testimony about statements made by Ms. Stutts relative to her intent to provide for her parents in the future. In light of our foregoing analysis, we believe that this was highly relevant evidence that should not have been excluded. Given subsection (c) of the Wrongful Death Act, such statements, in our view, would not have constituted inadmissible hearsay. Instead, the statements would have been offered merely to show Ms. Stutts' intent to assist in her parents' support. As it was defendant who precluded plaintiff from introducing any evidence of Ms. Stutts' desire to provide for her parents, we question how defendant can complain, on appeal, that plaintiff offered no evidence of the parents' reasonable expectations.

In addition, we note that, although Dr. Lee testified that the lost income to Ms. Stutts' parents was approximately $105,000,

the jury awarded plaintiff $55,000. It is thus clear that "the jury was not in fact misled by [Dr. Lee's] testimony, as defendant contend[s]. . . ." *Powell v. Parker*, 62 N.C. App. 465, 470, 303 S.E. 2d 225, 228 (1983), *disc. rev. denied*, 309 N.C. 322, 307 S.E. 2d 166 (1983). The judge instructed the jury that, in addition to lost income, it could award damages for other of the listed items under subsection (b)(4), and it is just as probable that the damages in this case represent compensation for any of those items. Defendant has not attacked the verdict on any of the other grounds of recovery on which the trial judge instructed the jury. Therefore, we hold that the judge's error in submitting the lost-income instruction was harmless, and we overrule this assignment of error.

The judgment of the trial court is

Affirmed.

Judges PARKER and ORR concur.