ARUN BAHL AND RAYETTA BAHL, ADMINISTRATORS OF THE ESTATE OF RENE LORRAINE BAHL, PLAINTIFFS V. SCOTT LEE TALFORD AND ROBERT JORDAN, JR., DEFENDANTS

---

ARUN BAHL AND RAYETTA BAHL, ADMINISTRATORS OF THE ESTATE OF RIANA ELIZABETH BAHL, PLAINTIFFS V. SCOTT LEE TALFORD AND ROBERT JORDAN, JR., DEFENDANTS

No. COA98-1571

(Filed 16 May 2000)

**Damages— wrongful death of children—lost income of parents**
    The portion of a wrongful death judgment awarding plaintiffs sums for income they might reasonably have expected to receive from their deceased daughters was remanded where there was no evidence tending to show that the deceased had ever expressed an intent to provide any of their income to their parents. Although they were brought up in a culture within which intra-family financial assistance may have been favored, absolutely no evidence tended to show that the deceased, specifically, would grow up to follow this example. N.C.G.S. § 28A-18-2(b)(4).

Appeal by unnamed defendant from orders and judgments filed 12 August 1998 by Judge Sanford L. Steelman, Jr., in Union County Superior Court. Heard in the Court of Appeals 6 October 1999.

BAHL v. TALFORD

[138 N.C. App. 119 (2000)]

*Harry B. Crow, Jr. and Charles B. Brooks, II, for plaintiffs-appellees.*

*Cranfill, Sumner & Hartzog, by William C. Robinson, for defendants-appellees Scott Lee Talford and Robert Jordan, Jr. No brief filed.*

*Caudle & Spears, P.A., by Lloyd C. Caudle, for unnamed defendant-appellant North Carolina Farm Bureau Mutual Insurance Company.*

JOHN, Judge.

Unnamed defendant North Carolina Farm Bureau Mutual Insurance Company (Farm Bureau) appeals the trial court's judgment in favor of plaintiffs Arun and Rayetta Bahl, administrators of the estates of Rene Lorraine Bahl (Rene) and Riana Elizabeth Bahl (Riana) (jointly, the deceased). We vacate the judgment in part and remand.

Pertinent facts and procedural history include the following: On 10 January 1995, Rene, age eleven, and Riana, age sixteen, daughters of plaintiffs, were passengers in an automobile operated by Michael Vega (Vega) in Union County. A vehicle driven by defendant Scott Lee Talford (Talford) and owned by defendant Robert Jordan (Jordan) struck the Vega automobile in the rear, whereupon it collided with a third vehicle, resulting in the deaths of Rene and Riana.

Plaintiffs filed separate actions on behalf of the estates of the deceased against Talford and Jordan 16 April 1996, alleging Talford's negligence had been a proximate cause of the deaths of Rene and Riana. Talford and Jordan answered, and Farm Bureau also filed answer in each case, as well as a third party complaint against Vega, alleging his negligence had caused the collision. Plaintiffs' subsequently amended complaints included wrongful death claims against Vega, and the amended answers of Talford and Jordan asserted cross-claims against Vega for contribution.

On 9 May 1998, plaintiffs settled with Vega for a total sum of $20,000.00 and thereafter dismissed with prejudice all pending claims against him. The trial court thereupon granted Vega's motion to dismiss with prejudice the remaining claims against him by Talford, Jordan and Farm Bureau.

Plaintiffs' actions were consolidated for jury trial and heard 21 July 1998. Prior to trial, Talford placed into the record his admission

that on the date of the alleged accident he was negligent and that negligence was a proximate cause of the collision and the death of the two minor deceased plaintiffs.

As a consequence, the sole issue for jury resolution was that of damages. Both plaintiffs testified at trial and also called as witnesses two state highway patrol officers and Dr. Charles Alford (Alford).

The trial court accepted Alford as "an expert witness in the field of forensic economics and projection of future income streams of children." Alford expressed his opinion that the earnings of Rene and Riana "through [their] parents life expectancy after subtracting personal subsistence expenditures would be in present value after taxes" the sums of $228,077.00 and $293,912.00, respectively. Alford acknowledged the amounts constituted estimates and represented the "discretionary income that would have been available to the girls," or money that "they could have used had they elected for the support of their parents."

At the close of plaintiffs' evidence, defendants moved for directed verdict, *see* N.C.G.S. § 1A-1, Rule 50(a) (1999), asserting plaintiffs had presented insufficient evidence to submit as an element of damages the amount of income plaintiffs might have received from the deceased. The motion was denied and defendants rested without presenting evidence. The jury returned verdicts awarding plaintiffs total damages of $400,000.00.

In addition, the jury responded to the following special interrogatory:

[w]hat portion of your award is for the present value of the amount of money which the deceased . . . could have expected to earn during the remainder of the lives of her parents, less the amount she would have spent on herself or for other purposes which would not have benefited (sic) her next of kin?

In its answer, the jury indicated it attributed the sums of $22,800.00 as applicable to Rene and $29,300.00 to Riana, *i.e.*, ten percent of the amount Alford had estimated as the future discretionary income of each.

Defendants moved for judgment notwithstanding the verdict (JNOV), *see* G.S. § 1A-1, Rule 50(b), new trial, *see* N.C.G.S. § 1A-1, Rule 59(a) (1999), and amended verdict, *see* G.S. § 1A-1, Rule 59(e). The trial court denied the motions and entered judgment in favor of plaintiffs 12 August 1998.

Farm Bureau timely appealed, specifying eight assignments of error addressed to two main issues: (1) that the trial court

> allowed the jury to speculate on the amount of income [plaintiffs], as parents, might have received from the [deceased] as an element of their damages on the grounds that, as a matter of law, the plaintiffs presented insufficient evidence during the trial to submit those issues to the jury;

and, (2) that statements made to the jury by plaintiffs' counsel in closing arguments were "highly inflammatory and prejudicial." However, Farm Bureau does not address the second issue in its appellate brief, and the three assignments of error relating thereto are deemed abandoned. *See* N.C.R. App. P. 28(b)(5) ("[a]ssignments of error not set out in the appellant's brief . . . will be taken as abandoned").

Farm Bureau's remaining five assignments of error are consolidated into one argument. Essentially, Farm Bureau asserts the trial court erroneously denied its directed verdict and JNOV motions, thereby allowing the jury to award as an element of damages the amount plaintiffs could have expected to receive from the deceased had they lived. Farm Bureau contends the sums attributed to this element of damages, $22,800.00 and $29,300.00, should be "credited on the verdicts and [the] interest . . . re-calculated." We must agree.

A JNOV motion seeks entry of judgment in accordance with the movant's earlier motion for directed verdict, notwithstanding the contrary verdict returned by the jury. See G.S. § 1A-1, Rule 50(b); *Northern Nat'l Life Ins. v. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). A ruling on such motion is a question of law, *see Penley v. Penley*, 314 N.C. 1, 9 n.1, 332 S.E.2d 51, 56 n.1 (1985), and presents for appellate review the identical issue raised by a directed verdict motion, *i.e.*, whether the evidence considered in the light most favorable to the non-movant was sufficient to take the case to the jury and to support a verdict for the non-movant, *see Henderson v. Traditional Log Homes*, 70 N.C.App. 303, 306, 319 S.E.2d 290, 292, *disc. review denied*, 312 N.C. 622, 323 S.E.2d 923 (1984). If more than a scintilla of evidence was presented in support of each element of the non-movant's claim, the motion would properly be denied. *Ace Chemical Corp. v. DSI Transports, Inc.*, 115 N.C. App. 237, 242, 446 S.E.2d 100, 103 (1994).

Damages recoverable for wrongful death are prescribed by statute, and include

**BAHL v. TALFORD**

[138 N.C. App. 119 (2000)]

[t]he present monetary value of the decedent to the persons enti-
tled to receive the damages recovered, including but not limited
to compensation for the loss of the reasonably expected;

a. Net income of the decedent . . . .

N.C.G.S. § 28A-18-2(b)(4) (1999). Farm Bureau does not maintain
plaintiffs presented insufficient evidence of the "present monetary
value of the . . . [n]et income of the decedent[s]," *id.*, but rather chal-
lenges the sufficiency of the evidence regarding the income plaintiffs
could have "reasonably expected" to receive from the deceased, *id.*;
*see also State v. Smith*, 90 N.C. App. 161, 169, 368 S.E.2d 33, 38-39
(1988) (parents may "only recover the amount of [the] income that
they reasonably might have received had [the decedent] lived"), *aff'd*,
323 N.C. 703, 374 S.E.2d 866, *cert. denied*, 490 U.S. 1100, 104 L. Ed. 2d
1007 (1989).

In response, plaintiffs point to certain appellate decisions holding
parents may recover for pecuniary injury, measured as loss of net
income, resulting from the death of a thirteen year old child, *Gurley
v. Power Co.*, 172 N.C. 690, 90 S.E. 943 (1916), or even a five month
old infant, *Russell v. Steamboat Co.*, 126 N.C. 961, 36 S.E. 191 (1900).
We note, however, that the cases cited by plaintiffs were decided well
before enactment of G.S. § 28A-18-2 in its present form.

The original wrongful death statute, N.C.G.S. § 28-174, was sig-
nificantly amended in 1969, *see Bowen v. Rental Co.*, 283 N.C. 395,
413-17, 196 S.E.2d 789, 801-04 (1973) (reciting history of wrongful
death statute), and was recodified effective 1975 as G.S. § 28A-18-2,
*see* 1973 N.C. Sess. Laws ch. 1329, §§ 3, 5. Prior to 1969, the statute
simply provided as follows:

"Damages recoverable for death by wrongful act.—The plaintiff
in such action may recover such damages as are a fair and just
compensation for the pecuniary injury resulting from such
death."

*Bowen*, 283 N.C. at 414, 196 S.E.2d at 802 (quoting prior version of
statute). Damages were calculated as the *"present value* of the *net
pecuniary worth* of the deceased based on *his* life expectancy." *Id.* at
415, 196 S.E.2d at 803 (final emphasis added). Under this standard,
the award of $1,000.00 to the parents in *Russell* upon the death of
their five month old son was approved. *Russell*, 126 N.C. at 961, 970,
36 S.E. at 191, 193.

The 1969 amendment, however,

> shift[ed] the focus for the determination of wrongful death dam-
> ages from ascertaining the loss of net income to the decedent's
> estate to ascertaining all monetary losses to the beneficiaries. . . .
> [N]ot only the present worth of the decedent's net income . . . but
> also the beneficiaries' life expectancies and expectations of gain
> from the decedent must be considered . . . .

Robert G. Byrd, *Recent Developments in North Carolina Tort Law*,
48 N.C.L. Rev. 791, 805 (1970). As the current statute emphasizes loss
of the income "reasonably expected" to be received by beneficiaries,
G.S. § 28A-18-2(b)(4), earlier cases construing G.S. § 28-174, with its
emphasis on loss to the decedent's estate, are inapposite to the issue
at hand.

We therefore turn to a consideration of plaintiffs' evidence on
the question of whether they "reasonably expected" to receive
any portion of the net income of Rene and Riana. *See* G.S.
§ 28A-18-2(b)(4). Taken in the light most favorable to plaintiffs, *see*
*Henderson*, 70 N.C. App. at 306, 319 S.E.2d at 292, the evidence
tended to show that:

Arun, the father of Rene and Riana, was of Indian descent;

Rene and Riana were partially raised in the Indian culture;

Arun's family had a history of giving financial assistance to mem-
bers of the family;

Arun's brother provided financial help to his and Arun's mother
after their father died;

Arun assisted his brothers and sisters financially and Rene and
Riana were aware of this; and,

"it's nothing out of the ordinary" for Indian children to help their
parents financially as the parents age.

However, no testimony was presented tending to show the
deceased had contributed money to their parents on any occasion in
the past nor that they may have contemplated doing so in the future.
Moreover, even though the deceased may have been "aware" of the
pattern of financial assistance in Arun's family, it appears the subject
was never discussed with their father, as evidenced by the following
testimony from Arun:

**BAHL v. TALFORD**

[138 N.C. App. 119 (2000)]

Q (Mr. Brooks, plaintiffs' attorney): Your daughter—given that your daughters were aware that your family helped support each other, had they ever said anything to you about the way your family helped each other out?

A (Arun Bahl): Not specifically.

Q: And had they, uh, ever said anything to you about the way you helped your brother in London?

. . . .

A: No. They never had anything positive or negative to say about it.

Few North Carolina cases speak directly to the issue. In *DiDonato v. Wortman*, 320 N.C. 423, 358 S.E.2d 489 (1987), our Supreme Court held that

lost income damages normally available under N.C.G.S. § 28A-18-2(b)(4)a. cannot be recovered in an action for the wrongful death of a stillborn child,

*id.* at 432, 358 S.E.2d at 494, because the calculation of damages would simply be too speculative, *id.* For older children and adults, courts in this jurisdiction have recognized that "[i]t would be difficult, if not impossible, to formulate a rule of general application for the measurement of such damages," *Bowen*, 283 N.C. at 419, 196 S.E.2d at 805, and that "*[s]ome* speculation . . . must always be necessary," *Stutts v. Adair*, 94 N.C. App. 227, 238, 380 S.E.2d 411, 418 (1989). Nonetheless, the decisions reflect certain guidelines.

First, although "concrete manifestations of the child's intent to provide support . . . would obviously demonstrate that the parents had reasonable expectations to the child's income," it is not necessary "to demand actual support of the parents as the sole ground for any recovery of lost income." *Id.* However, some evidence must be presented "to show that either of the victim's parents reasonably expected to receive any . . . of his income," *Smith*, 90 N.C. App. at 169, 368 S.E.2d at 39, and "such expectations could . . . be shown through . . . the verbally-expressed intentions of the child," *Stutts*, 94 N.C. App. at 238, 380 S.E.2d at 418.

Significantly, this Court in *Stutts* held that

the trial judge erred by submitting the issue of damages for lost income because there was no evidence before the judge that [the

deceased] had ever expressed an intent to provide any of her income to her parents.

*Id.* at 239, 380 S.E.2d at 418-19.

In the case *sub judice*, it appears plaintiffs were allowed to testify freely, yet presented no evidence Rene and Riana "had ever expressed an intent to provide any of [their] income to [their] parents." *Id.* at 239, 380 S.E.2d at 419. Indeed, during the directed verdict motion hearing, plaintiffs' counsel conceded his clients had brought forward "no absolute direct evidence" on the issue of what plaintiffs "could have expected to receive."

In short, we conclude it was error for the trial judge to have submitted to the jury as an element of damages the amount of income plaintiffs could reasonably have expected from the deceased. *See id.; see also Knoles v. Salazar,* 766 S.W.2d 613, 616 (Ark. 1989) (parents could not recover lost income damages upon death of sixteen-year old child who had never "expressed a hope or desire, or demonstrated an intention or disposition, to be of financial assistance to [his] parents"). At best, plaintiffs' evidence tended to show the deceased were non-communicative on the question of providing aid for their family. In the words of Arun, they "never had anything positive or negative to say about" the manner in which his family accorded financial help to other family members. Although it appears, taking the evidence in the light most favorable to plaintiffs, *see Henderson,* 70 N.C. App. at 306, 319 S.E.2d at 292, the deceased were brought up in a family and culture within which intra-family financial assistance may have been favored, absolutely no evidence tended to show that Rene and Riana, specifically, would grow up to follow this example.

We acknowledge our earlier dicta that *"[s]ome* speculation" nearly always is required to establish the element of damages at issue, *Stutts,* 94 N.C. App. at 238, 380 S.E.2d at 418; however,

[d]amages available under [G.S. § 28A-18-2] are not automatic; they are what the legislature will permit the beneficiaries to recover *provided those damages can be proved.* The law disfavors—and in fact prohibits—recovery for damages based on sheer speculation. Damages must be proved to a reasonable level of certainty, and may not be based on pure conjecture.

*DiDonato,* 320 N.C. at 430-31, 358 S.E.2d at 493 (citation omitted). A "reasonable level of certainty," *id.* at 431, 358 S.E.2d at 493, is not an

impossible standard in regard to the element of damages at issue herein, even though the case may involve a minor child. For example, testimony as to a child's monetary contributions to the family from part-time employment, expressions of a future intent to assist parents financially, see Stutts, 94 N.C. App. at 238, 380 S.E.2d at 418, or evidence that an older sibling had provided monetary aid to her parents, might in the appropriate case suffice to allow the issue to go to the jury. However, no such testimony is reflected in the instant record.

In sum, the challenged amount of damages must necessarily have been based upon "sheer speculation," DiDonato, 320 N.C. at 430, 358 S.E.2d at 493, in that no evidence was presented tending to show that plaintiffs could "reasonably [have] expected," G.S. § 28A-18-2(b)(4), to receive any portion of the deceased's future income. Although submission of that element of damages was error, we commend the trial court's foresight in submitting the special interrogatory noted above which allows remand without the necessity of ordering a new trial.

To conclude, that portion of the trial court's judgment awarding plaintiffs $22,800.00 and $29,300.00 for income they might reasonably have expected to receive from Rene and Riana, respectively, is vacated and this case remanded for entry of a corrected judgment and recalculation of the amount of interest on the final damage award.

Vacated in part and remanded.

Judges LEWIS and McGEE concur.